UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

DEBORAH MAHONEY,

                Plaintiff,           **MEMORANDUM & ORDER**
                                      21-CV-4127 (MKB)

      v.

WHOLE FOODS MARKET GROUP, INC.,

                Defendant.
---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Deborah Mahoney commenced the above-captioned action against Defendant

Whole Foods Market Group, Inc. ("Whole Foods") on November 30, 2020, in the Supreme

Court of New York, Nassau County, alleging a claim of negligence under New York law and

failure to maintain the safety of a mercantile establishment in violation of New York Labor Law

section 376[1] based on a slip-and-fall incident that occurred while Plaintiff was shopping at a

Whole Foods store in Albany, New York on July 21, 2019.  (Verified Compl. ¶¶ 5–33, annexed

to Notice of Removal as Ex. A, Docket Entry No. 1-1.)  On July 22, 2021, Defendant removed

---

[1] Plaintiff alleges that Defendant "failed adequately and properly to maintain and equip
the Whole Foods Store located at 1425 Central Avenue, Albany, New York so as to provide a
reasonable protection to the safety of all persons frequenting said store" and that its "failure to
comply with New York Labor Law [§] 376 . . . was a proximate cause" of Plaintiff's injury.
(Verified Compl. ¶¶ 31, 33, annexed to Notice of Removal as Ex. A, Docket Entry No 1-1.)
Defendant does not address this claim.  (*See generally* Def.'s Mem. of Law in Supp. of Def.'s
Mot. for Summ. J. ("Def. Mem."), Docket Entry No. 21-1.)  Defendant only moved for summary
judgment to dismiss Plaintiff's Complaint "alleg[ing] a New York State law claim, namely that
she sustained injuries as a result of Whole Foods's negligent maintenance of its premises."
(Def.'s Mem. 8.)  The Court therefore declines to address Plaintiff's section 376 claim.

the action to the Eastern District of New York based on diversity jurisdiction under 28 U.S.C. § 1332.  (Notice of Removal, Docket Entry No. 1.)

On May 9, 2024, Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to Plaintiff's negligence claim, and Plaintiff opposed the motion.[2]  For the reasons set forth below, the Court grants Defendant's motion for summary judgment on Plaintiff's negligence claim and orders Plaintiff to show cause as to why the Court should not dismiss her claim under New York Labor Law section 376.

## I.    Background

The following facts are undisputed unless otherwise noted.[3]

### a.    Customer safety protocol at Whole Foods

Plaintiff alleges she was injured in a Whole Foods store located at 1425 Central Avenue, Albany, New York.  (Def.'s 56.1 ¶¶ 1–2; Pl.'s 56.1 Resp. ¶¶ 1–2.)  According to Keith Haack,[4]

---

[2]  (Def.'s Notice of Mot. for Summ. J. ("Def.'s Mot."), Docket Entry No. 21; Def.'s Mem.; Pl.'s Mem. of Law. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Docket Entry No. 22; Def.'s Reply Mem. in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 24.)

[3]  (Def.'s 56.1 Stmt. ("Def.'s 56.1"), Docket Entry No. 21-2; Pl.'s Resp. to Def.'s 56.1 ("Pl.'s 56.1 Resp."), Docket Entry No. 22-1; Pl.'s 56.1 Counterstmt. ("Pl.'s 56.1"), Docket Entry No. 22-1; Def.'s Resp. to Pl.'s 56.1 ("Def.'s 56.1 Resp."), Docket Entry No. 23.)

[4]  Throughout Plaintiff's 56.1 Statement, she admits that she provided certain testimony, or that Defendant's witness, Keith Haack, provided certain testimony.  (See, e.g., Pl.'s 56.1 Resp. ¶¶ 3–4, 49–50.)  Unless otherwise disputed or contradicted by the record, the Court considers these facts uncontested.  McCarthy v. Motorola Sols. Inc., No. 21-CV-4020, 2024 WL 3965950, at *1 (E.D.N.Y. Aug. 28, 2024) ("Likewise, 'responses that do not point to any evidence in the record that may create a genuine issue of material fact do not function as denials, and will be deemed admissions of the stated fact.'" (quoting Baity v. Kralik, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014))); Cui v. Fed. Bureau of Investigation, 551 F. Supp. 3d 4, 15 (E.D.N.Y. 2021) ("Generally, plaintiff['s] failure to respond or contest the facts set forth by the defendants in their . . . 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed."  (internal quotation marks omitted) (quoting Exeter Holdings, Ltd. v. Haltman, No. 13-CV-5475, 2020 WL 4587533, at *2 n.3 (E.D.N.Y. Apr. 21, 2020)));

an Assistant Store Team Leader ("ASTL") at Defendant's Central Avenue location, Whole Foods provides annual training to its employees regarding how to identify and remedy slip-and-fall hazards. (Dep. of Keith Haack ("Haack Dep.") 7:16–18, 11:13–12:16, annexed to Decl. of Mitchell B. Levine ("Levine Decl.") as Ex. E, Docket Entry No. 21-8.) In the event of a "slip hazard," employees are expected to "stay in the area," "ask somebody to come by with paper towels," and "get a wet floor sign." (*Id.* 11:9–23, 18:15–20.) Whole Foods employees also post "Caution: Wet Floor" signs after identifying a slip hazard or as a precautionary measure.[5] (*Id.* 92:17–23; Pl.'s 56.1 ¶ 81, Def.'s 56.1 Resp. ¶ 81.) Every hour, the maintenance team members conduct "Gleason walks" to inspect the entire sales floor and sweep for debris or other hazards. (Haack Dep. 17:2–18:20, 19:13–20:12; Def.'s 56.1 ¶¶ 50–51; Pl.'s 56.1 Resp. ¶¶ 50–51.) Once each respective area of the store is clean, the maintenance team member on duty will make an entry in a digital Gleason Inspection Log.[6] (Haack Dep. 17:2–18:20; Def.'s 56.1 ¶ 50; Pl.'s 56.1 Resp. ¶ 50; *see also* Gleason Inspection Log, annexed to Levine Decl. as Ex. H, Docket Entry

---

*Angulo v. Nassau County*, 89 F. Supp. 3d 541, 545 n.1 (E.D.N.Y. 2015) ("Generally, a party's failure to respond or contest the facts set forth by the [moving party] in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." (internal quotation marks omitted) (quoting *Jessamy v. City of New Rochelle,* 292 F. Supp.2d 498, 504 (S.D.N.Y.2003))).

[5] Defendant admits and denies in part whether Whole Foods employees are trained to post wet floor signs in the event of a slip hazard. (Def.'s 56.1 Resp. ¶ 81.) Defendant admits that identifying a "spill or hazard . . . [is] one reason that such a sign may be present on the sales floor," but states that "Caution: Wet Floor" signs "would sometimes be present near the 'split' between the two seafood cases as a precautionary measure." (*Id.*) Defendant further notes that the sign present on the date of Plaintiff's fall was located "approximately [sixteen] feet away from where [P]laintiff's accident occurred." (*Id.*)

[6] For each area or "asset" of Defendant's store, the inspection log asks, "Is the [a]rea [c]lean and [h]azard [f]ree?" (*See generally* Gleason Inspection Log, annexed to Decl. of Mitchell B. Levine ("Levine Decl.") as Ex. H, Docket Entry No. 21-11.) All entries mark the maintenance team member's response as "[c]lear," "[a]rea [c]lear," or "[o]ther [s]pill/[h]azard." (*Id.*)

No. 21-11.) Employees would also prepare customer incident reports when accidents occurred. (Haack Dep. 55:3–56:12; Pl.'s 56.1 Resp. ¶ 53; Def.'s 56.1 ¶ 53.) Leadership at Defendant's Central Avenue location "over[saw] the maintenance team members" and the performance of the sales floor inspections. (Haack. Dep. 19:13–22:4, Def.'s 56.1 ¶ 51; Pl.'s 56.1 Resp. ¶ 51.) As an ASTL, Haack testified he is responsible for "tak[ing] care of everything as far as [Defendant's] policies go," including lapping the entire floor and checking on all team members. (Haack Dep. 21:16–22:4, 24:18–25:7.) He "probably lap[s] the floor once an hour." (*Id.* 21:20–22:4; Def.'s 56.1 ¶ 51; Pl.'s 56.1 Resp. ¶ 51.)

### b.    The July 21, 2019 accident

On the evening of July 21, 2019, Plaintiff entered Defendant's Central Avenue store to buy fish. (*See* Dep. of Deborah Mahoney ("Mahoney Dep.") 23:5–24:22, annexed to Levine Decl. as Ex. D, Docket Entry No. 21-7; Def.'s 56.1 ¶¶ 1–3; Pl.'s 56.1 Resp. ¶¶ 1–3.) According to Plaintiff, the accident occurred at approximately 7:00 P.M. "at the fish stand" in Defendant's store. (Mahoney Dep. 23:12–22; Def.'s 56.1 ¶¶ 3, 19; Pl.'s 56.1 Resp. ¶¶ 3, 19.) The parties agree that Defendant's Central Avenue store fills its seafood display cases with ice, which are designed to melt into a floor drain. (Pl.'s 56.1 ¶¶ 63–64; Def.'s 56.1 Resp. ¶¶ 63–64.) Plaintiff was alone at the time of the accident. (Mahoney Dep. 23:23–25.) Plaintiff was wearing "gym clothes" and flip-flop sandals. (*Id.* 34:10–35:2.) Plaintiff was in the store for "several minutes" prior to her fall. (*Id.* 24:16–22; Def.'s 56.1 ¶ 4; Pl.'s 56.1 Resp. ¶ 4.) During that time, Plaintiff did not see water on the floor or see any water dripping onto the floor anywhere in the store. (Mahoney Dep. 82:9–83:16, 93:7–12; Def.'s 56.1 ¶¶ 7, 13, 18, 21; Pl.'s 56.1 Resp. ¶¶ 7, 13, 18, 21.) Immediately before her fall, Plaintiff was standing on a "rug" in front of the fish counter. (Mahoney Dep. 70:9–18; Def.'s 56.1 ¶ 8; Pl.'s 56.1 Resp. ¶ 8.) Plaintiff did not feel any

4

moisture beneath her feet while standing on the rug and does not recall seeing any footprints or cart tracks in the area where she fell. (Mahoney Dep. 72:8–20, 99:10–100:16; Def.'s 56.1 ¶¶ 11, 12, 14; Pl.'s 56.1 Resp. ¶¶ 11, 12, 14.) The parties dispute whether there were "wet floor" or "caution" signs in the area where Plaintiff fell.[7] (Mahoney Dep. 75:20–23; Haack Dep. 132:15–17; Customer Incident Report 5, annexed to Levine Decl. as Ex. C, Docket Entry No. 21-6.) Video surveillance footage, which captured Plaintiff's fall, shows a caution sign in Defendant's Seafood Department, approximately sixteen feet away from the location of Plaintiff's accident.[8] (Video Footage 1:10–1:39, annexed to Levine Decl. as Ex. F, Docket Entry No. 21-9; Haack Dep. 71:15–19.)

Approximately four or five minutes after she approached the fish counter, Plaintiff took a single step off the rug in front of the counter and immediately fell. (Mahoney Dep. 70:15–18, 99:6–9; Def.'s 56.1 ¶¶ 8, 9, 15; Pl.'s 56.1 Resp. ¶¶ 8, 9, 15; Video Footage 1:10–1:17.) According to the Customer Incident Report, Plaintiff fell at approximately 7:12 P.M.[9] (Customer

---

[7]  Plaintiff initially testified that she saw no "wet floor" or "caution sign," but the video surveillance footage from the incident shows a "Caution: Wet Floor" sign in Defendant's Seafood Department. (Mahoney Dep. 75:20–23; Video Footage 1:10–1:39, annexed to Levine Decl. as Ex. F, Docket Entry No. 21-9.) Further, Haack, Defendant's assistant store team leader, and Plaintiff testified that the video shows a wet floor sign in the seafood area, and the Customer Incident Report states that a sign was tented at the time Plaintiff fell. (Mahoney Dep. 169:17–170:13; Haack Dep. 132:15–17; Customer Incident Report 5, annexed to Levine Decl. as Ex. C, Docket Entry No. 21-6.) Defendant argues that the presence of the sign is immaterial because the wet floor sign was located approximately sixteen feet away from the location of Plaintiff's accident, in a different area of the Seafood Department. (Def.'s 56.1 Resp. ¶ 80.)

[8]  The video footage captures the seconds immediately before and after Plaintiff's fall, but it does not capture when the caution sign was placed or when the Seafood Department floor was last inspected. (*See generally* Video Footage 00:00–2:06.)

[9]  The parties dispute whether the accident occurred at 7:12 P.M. or 7:13 P.M. (*See* Customer Incident Report (stating that Plaintiff's accident occurred at 7:12 P.M.); Pl.'s 56.1 Resp. ¶ 58.) Because the video appears to be "playing at a faster speed than normal," (Haack

Incident Report 5.)  At the time of her fall, Plaintiff was carrying a grocery basket with fish inside.  (Mahoney Dep. 65:8–15, 70:15–18.)  The floor in the area where Plaintiff slipped was "light colored" and covered in part by a rug.  (Mahoney Dep. 65:25–66:3, 70:9–16; Def's 56.1 ¶¶ 8, 20; Pl.'s 56.1 Resp. ¶¶ 8, 20.)  Plaintiff did not look down at the floor prior to her fall.  (Mahoney Dep. 75:5–9; Def's 56.1 ¶ 17; Pl.'s 56.1 Resp. ¶ 17.)  As Plaintiff slipped, her body fell to the floor and she smashed the back of her head and her right shoulder on the floor.[10]  (Mahoney Dep. 48:10–50:14; Pl.'s 56.1 ¶ 75.)  After her fall, Plaintiff noticed clear water on the floor and her clothes were wet.[11]  (Mahoney Dep. 66:9–21, 73:14–74:6, 90:18–24; Def.'s 56.1 Resp. ¶ 76.)  Plaintiff tried to clean up the spill with her foot, but a "pretty big" puddle of water remained on the floor.  (Mahoney Dep. 66:24–67:13, 74:16–25; Def.'s 56.1 Resp. ¶¶ 77–79.)  The parties dispute whether water was present in the area where Plaintiff fell, and, if so, whether it was visible.[12]  (Pl.'s 56.1 Resp. ¶ 22; Def.'s 56.1 Resp. ¶¶ 76–79.)  After her fall, Plaintiff did not see any footprints or cart tracks leading in or through the area where she slipped, nor did she see water accumulating on the floor or dripping from the fish counter.  (Mahoney Dep. 81:16–19, 93:7–12, 100:7–16.)  Plaintiff is not aware of how long the water was on the floor prior to her

---

Dep. 147:5–22), the Court does not rely on the video footage to determine the time at which Plaintiff fell.  (*See generally* Video Footage 00:00–2:06.)

[10]  Defendant disputes whether Plaintiff "smashed" her head and right shoulder when she slipped in the Seafood Department and argues that her alleged damages are immaterial to their motion for summary judgment on the liability issue of lack of prior notice.  (Def.'s 56.1 Resp. ¶ 75.)  According to Plaintiff's deposition testimony, she hit her head and right shoulder when she fell.  (Mahoney Dep. 48:5–49:21.)

[11]  When asked whether "[t]he water that [she] slipped on was. . . visible," Plaintiff stated that "[she] did not see it before hand."  (Mahoney Dep. 66:12–14.)

[12]  Due to the video footage's low quality, the Court does not rely on the video to discern whether water was present in the area where Plaintiff fell.  (*See generally* Video Footage 1:10–1:39.)

fall or of anyone complaining to Defendant about water being present on the floor. (*Id.* 90:2–5, 130:12–18.) In addition, no Whole Foods employee or manager mentioned how the water got onto the floor, how long the water had been present, or any chronic issues involving water in Defendant's Seafood Department. (*Id.* 106:18–108:5, 130:5–131:25.)

On the day of Plaintiff's accident, Marshon Harris, the maintenance team member on duty, performed an inspection of the floor in the Seafood Department. (Haack Dep. 126:13–127:6; Gleason Inspection Log 18.) Harris marked the area as "clear" on the inspection log prior to Plaintiff's accident, at approximately 7:02 P.M. (Haack Dep. 126:13–127:15; Gleason Inspection Log 18.) The parties dispute whether this indicates the floor in the Seafood Department was clear of any liquid, hazards or debris, and whether Harris marked the area as clear[13] within ten or within eleven minutes prior to her accident. (Pl.'s 56.1 Resp. ¶¶ 57–58 ; Def.'s 56.1 Resp. ¶¶ 57–58.) According to ASTL Keith Haack, a store employee working behind the fish counter informed him of Plaintiff's fall. (Haack Dep. 35:13–36:4, 111:8–12.) The parties dispute whether Haack arrived on the scene of Plaintiff's accident within thirty seconds. (Haack Dep. 139:12–140:7; Pl.'s 56.1 Resp. ¶ 54; Def.'s 56.1 Resp ¶ 54; Video Footage 1:10–1:41.) When Haack arrived, he found no foreign substance on the floor in the area

---

[13] The parties use the word "clean" and "clear" interchangeably when referring to the Gleason Inspection Log. (*See* Def.'s 56.1 ¶ 57 (stating that Harris "ensured the [seafood] area to be clear of any liquid, hazards or debris"); Pl.'s 56.1 Resp. ¶ 58 ("The inspection Log indicates that Marshon Harris marked the area as 'clean' at 7:02 PM"); Gleason Inspection Log 18 (using the word "clear" and "clean").) In addition, the parties dispute whether there is a way for employees to note a hazard in store records. (Def.'s Resp. ¶ 89.) However, the Gleason Inspection Log appears to allow employees to log when a hazard is present. (*See* Gleason Inspection Log 17 (noting that the men's restroom has an "Other Spill/Hazard" and that corrective action was taken).) Haack testified that an area is only marked as "clear" when a maintenance team member has performed a Gleason Walk in the area and confirmed the area was "clean and hazard free." (Haack Dep. 119:4–121:3.)

of Plaintiff's fall.  (Haack Dep. 104:14–23; Customer Incident Report 5; Def.'s 56.1 ¶ 55; Pl.'s 56.1 ¶ 55.)  Haack testified that the floor was "spotless" and contained no water, dirt, debris, or other foreign substance.  (Haack Dep. 34:8–35:6; 57:7–20; Def.'s 56.1 ¶ 56; Pls's 56.1 Resp. ¶ 56.)  Haack prepared an Incident Report.  (Haack Dep. 99:20–22; Customer Incident Report 5–6; Def.'s 56.1 ¶ 53; Pl.'s 56.1 Resp. ¶ 53.)

Several months after the incident, in April of 2020 and July of 2020, Plaintiff returned to the Defendants Central Avenue location and took photographs.  (Photographs, annexed to Decl. of Brian C. Pascale ("Pascale Decl.") as Ex. 1, Docket Entry No. 22-3; Aff. of Deborah Mahoney ("Mahoney Aff.") ¶¶ 1–8, annexed to Pascale Decl. as Ex. 1, Docket Entry No. 22-4.)  The parties dispute whether these photos accurately depict the floor of the Seafood Department because they are taken nine and twelve months after Plaintiff's accident.  (Def.'s 56.1 Resp. ¶¶ 65–66.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see also Capitol Recs., LLC v. Vimeo, Inc.*,  --- F.4th ---, 2025 WL 77234, at *6 (2d Cir. Jan. 13, 2025) (quoting Fed. R. Civ. P. 56(a)).  The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128,

137 (2d Cir. 2003)); *see also Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party." (quoting *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126 (2d Cir. 2013))).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.*  The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; and then citing *Garcia*, 706 F.3d at 127, 129); *see also Capitol Recs.*, 2025 WL 77234, at *6 ("[A] genuine dispute as to a material fact precludes summary judgment 'where the evidence is such that a reasonable jury could decide in the non-movant's favor.'"  (quoting *Lucente v. County of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020))).

  **b.  Applicable burden of proof**

  Defendant argues that although the "[C]omplaint solely alleges a New York State law claim" for negligence, "the applicable standard of review here is the federal summary judgment standard."  (Def.'s Mem. 8.)  Defendant also argues that Plaintiff bears the burden of proving notice and that Defendant "as the moving party, may point to the absence of evidence that it caused or had notice of the hazard."  (*Id.* at 9; Def.'s Reply 5–6.)

Plaintiff argues that, because the Court sits in diversity, "it applies federal law to procedural matters and state law to substantive matters." (Pl.'s Opp'n 5.) Plaintiff states that "[t]he parties agree that New York state law applies to substantive matters here." (*Id.*) Plaintiff makes no arguments as to which party bears the burden of proof, but argues that (1) Defendant had actual notice of the slip hazard and (2) she "may prove constructive notice by demonstrating either that the defendant knew the hazard was a recurring condition or that the defendant failed to conduct a reasonable inspection of the area." (*Id.* at 5–7, 11.)

Where an action has been removed from New York state court on the basis of diversity of citizenship between the parties, the claims are governed by New York substantive law and federal procedural law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Windward Bora LLC v. Sotomayor*, 113 F.4th 236, 241 (2d Cir. 2024) (noting that where "subject-matter jurisdiction is based on diversity . . . 'we must "predict how [New York's] highest court would resolve"' these issues" (second alteration in original)); *Covington Specialty Ins. Co. v. Indian Lookout Country Club*, 62 F.4th 748, 752 (2d Cir. 2023) (noting that "since the district court was sitting in diversity, it was bound to apply the substantive law of the forum state — here, New York" (alterations, internal quotation marks, and citation omitted)); *Sarkees v. E. I. Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021) ("In a diversity of citizenship case, state law, here New York's, applies to substantive issues, and federal law applies to procedural issues."). The moving party's burden of proof on a summary judgment motion is procedural, and under the distinction created by *Erie Railroad Co. v. Tompkins* and its progeny, is subject to federal law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Tenay v. Culinary Tchrs. Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (applying the federal summary judgment standard to a New York slip-and-fall case); *Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 273

(S.D.N.Y. 2024) ("Allocation of the burden of proof at summary judgment is a matter of procedural law, which . . . is governed by federal law."); *Demelio v. Wal-Mart Stores E., L.P.*, No. 21-CV-1900, 2023 WL 2480192, at \*3 (S.D.N.Y. Mar. 13, 2023) ("While New York law governs the substantive slip-and-fall claim, federal law applies to procedural aspects of the claim." (footnote omitted)).

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) ("The party seeking summary judgment bears the burden of establishing that no genuine issue of material of fact exists, but when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to an absence of evidence on an essential element of the nonmovant's claim." (internal quotation marks and citation omitted)); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (noting that a "party moving for summary judgment may satisfy his burden . . . by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim" (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988))); *Perez v. Dolgen Corp. of N.Y. Inc.*, 721 F. Supp. 3d 206, 214 (S.D.N.Y. 2024) ("By contrast [to New York State law], under the federal standard, a '[d]efendant's summary judgment burden is satisfied if it can point to "an absence of evidence to support an essential element" of [the] [p]laintiff's negligence claim.'" (second, third, and fourth alterations in original) (quoting *Sauro* v. *Costco Wholesale Corp.*, No. 18-CV-2091, 2019 WL 3046852, at \*6 (E.D.N.Y. May 29, 2019))). Once the moving party has met its burden, the non-moving party may demonstrate that there is a genuine issue for trial by identifying specific facts and affirmative evidence that contradict those offered by the moving party. *Celotex*, 477 U.S. at 323–24; *see also Bustamante*,

100 F.4th at 432 ("Once a movant has [met its burden], the nonmovant must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks and citation omitted)); *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) ("If the moving party carries its burden, the nonmoving party must 'come forward with evidence that would be sufficient to support a jury verdict in its favor.'" (quoting *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002))); *Strass v. Costco Wholesale Corp.*, No. 14-CV-6924, 2016 WL 3448578, at *3 (E.D.N.Y. June 17, 2016) ("Under the federal summary judgment standard, [d]efendant is not required to put forth evidence affirmatively demonstrating its lack of knowledge or its constructive knowledge; rather, it need only show that [p]laintiffs will not be able to prove at trial that [d]efendant had such knowledge.").

The Court therefore applies federal procedural law to determine the parties' relative burdens of proof. *See Tenay*, 281 F. App'x at 12–13 ("We have determined under [Rule 56] . . . that the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. . . . At trial under New York law, [the plaintiff] would bear the burden of proof on the elements of his premises liability claim." (citations omitted)). Accordingly, Defendant may meet its burden at summary judgment by demonstrating that Plaintiff's evidence is insufficient to establish an essential element of her negligence claim. *Bustamante*, 100 F.4th at 432. If Defendant meets this burden, Plaintiff must "set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)); *see also Strass*, 2016 WL 3448578, at *3 ("Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." (citing *Celotex*, 477 U.S. at 324)).

### c. Plaintiff's negligence claim

Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish that (1) Defendant had actual notice of "of the alleged water on the floor prior to her slipping upon the same," or (2) "the water she slipped upon existed for a long enough period of time to impose liability upon [Defendant] based upon constructive notice." (Def.'s Mem. 11–12.)

Plaintiff argues that Defendant (1) "had actual notice because it placed, before Plaintiff fell, a 'Caution: Wet Floor' sign in the Seafood Department where she fell," and "had constructive notice . . . because it knew the Seafood Department's wet floor was a recurring condition it left unaddressed." (Pl.'s Opp'n 4.)

"Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023) (quoting *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021)); *see also Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) ("To establish liability under New York law, a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach." (citing *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985))); *Reynolds v. Amtrak*, --- F. Supp.3d ---, 2024 WL 4337554, at *6 (S.D.N.Y. Sept. 27, 2024) ("Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" (quoting *Borley*, 22 F.4th at 78)); *Johnson v. AFNI, Inc.*, No. 22-CV-2930, 2023 WL 2970919, at *2 (S.D.N.Y. Apr. 15, 2023) ("To state a claim for

negligence under New York law, a plaintiff 'must establish the existence of a legal duty, a breach of that duty, proximate causation, and damages.'" (quoting *MVB Collision, Inc. v. Allstate Ins. Co.*, 13 N.Y.S.3d 137, 138 (App. Div. 2015))).

"In slip-and-fall cases, . . . to show a 'breach of duty,' a plaintiff must show that a defendant either created the dangerous condition or had actual or constructive notice of the condition and its dangerousness." *Borley*, 22 F.4th at 79 (quoting *Walsh v. Super Value, Inc.*, 904 N.Y.S.2d 121, 125 (App. Div. 2010)); *Reynolds*, 2024 WL 4337554, at *8 (same); *see also Shin v. Wu*, No. 22-2911, 2023 WL 6799288, at *2 (2d Cir. Oct. 16, 2023) ("To show a breach of duty, the plaintiff must demonstrate that the defendant either created the defective condition, or had actual or constructive notice thereof." (internal quotation marks omitted) (quoting *Tenay*, 281 F. App'x at 13)); *Tenay*, 281 F. App'x at 13 (same); *Kirbaran*, 720 F. Supp. 3d at 274 ("In order to show a breach of the duty of care in a 'slip-and-fall' case . . . , [the] plaintiff must offer evidence 'that a defendant either created the dangerous condition or had actual or constructive notice of the condition and its dangerousness.'" (quoting *Borley*, 22 F.4th at 79)); *cf. Bynoe v. Target Corp.*, 548 F. App'x 709, 710 (2d Cir. 2013) ("Under New York law, a landowner, who did not create the dangerous condition, is liable for negligence when a condition on his land causes injury only when the landowner had actual or constructive notice of the condition." (quoting *Taylor v. United States*, 121 F.3d 86, 89–90 (2d Cir. 1997))); *Burden v. Wal-Mart Stores E., LP*, No. 17-CV-1289, 2018 WL 4680025, at *4 (S.D.N.Y. Sept. 28, 2018) (observing that "[i]n a premises liability case, a plaintiff must first show 'the existence of a dangerous or defective condition' that caused the accident," and then must show "that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it" (first quoting *Vasquez v.*

*United States*, No. 14-CV-1510, 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016); and then

quoting *Decker v. Middletown Walmart Supercenter Store*, No. 15-CV-2886, 2017 WL 568761,

at *4 (S.D.N.Y. Feb. 10, 2017))).

      i.   **There are no genuine disputes of material fact as to whether
Defendant had actual or constructive notice of a hazardous condition**

Construing the evidence in Plaintiff's favor, the Court grants Defendant's motion for

summary judgment on Plaintiff's negligence claim because there is no genuine dispute of fact

that Defendant did not have actual or constructive notice of the condition.

      1.   **Defendant did not have actual notice of a hazardous condition**

Defendant argues that Plaintiff cannot establish that Whole Foods had actual notice of the

alleged slip hazard.  (Def.'s Mem. 11–12.)  In support, Defendant argues that Plaintiff "has no

knowledge of any complaints made to anyone at Whole Foods concerning the presence of any

water" on the floor, "no knowledge of anyone else who slipped and fell in the seafood area," no

"know[ledge] of any Whole Foods employee who possessed knowledge of the presence of water

on the floor," and no "knowl[edge] of any Whole Foods employee who was aware . . . of alleged

ongoing problems of 'chronic issues' involving water on the floor in the area of the fish counter"

prior to her accident.  (*Id.* at 11.)  In addition, Defendant argues that Plaintiff "did not recall

hearing any Whole Foods employee . . . saying anything to [P]laintiff . . . about having been

aware of the alleged water."  (*Id.* at 11–12.)  Defendant also contends that Plaintiff has

"conceded that there were no 'wet floor' or 'caution' signs in the area where she fell at the time

of her accident."  (*Id.* at 12.)

Plaintiff acknowledges that she testified that she "she did not see any 'wet floor or

caution signs' in the area before or after her fall," but she argues the video footage, which shows

a "Caution: Wet Floor" sign in Defendant's Seafood Department, "is undeniable and may be

credited over her memory on this point." (Pl.'s Opp'n 8–9.) Plaintiff contends that Defendant had actual notice of the Seafood Department's wet floor "because it had placed, prior to Plaintiff's fall, a 'Caution: Wet Floor' sign in the Seafood Department where she fell." (*Id.* at 7.) In support, Plaintiff argues that "[t]he presence of at least one warning sign is sufficient to raise an issue of fact as to whether a defendant had actual notice of a hazardous condition." (*Id.* at 7 (citation omitted).) Plaintiff contends that whether the wet floor sign was "close enough to where Plaintiff fell . . . raises a question of fact, not law." (*Id.* at 10.)

"Actual notice requires the plaintiff to prove that the defendants were, in fact, aware of the dangerous condition." *Albright v. Target Corp.*, No. 21-CV-4811, 2023 WL 3997381, at *1 (E.D.N.Y. June 13, 2023) (quoting *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 332 (E.D.N.Y. 1998)); *Strass*, 2016 WL 3448578, at *4 ("To show actual notice, the plaintiff must 'prove that the defendants were, in fact, aware of the dangerous condition.'" (quoting *Quarles*, 997 F. Supp. at 332)); *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) ("Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition.").

Plaintiff offers no evidence that Defendant or its employees were aware that the floor was wet in the area where she fell prior to her accident, and does not point to any evidence that Defendant was aware of a slip hazard in the Seafood Department prior to her accident. In fact, Keith Haack, an ASTL at Defendant's Central Avenue store, testified that he was not aware of any slip-and-fall accidents in the area of the seafood display cases prior to Plaintiff's accident or any leaks from the seafood display cases.[14] (Haack Dep. 31:19–33:11, 60:13–16; Def.'s 56.1

---

[14] Plaintiff mischaracterizes the testimony proffered by Defendant's witness, Keith Haack. Plaintiff disputes whether Haack testified that he did not recall regular occurrences of

¶¶ 59, 60, 62; Pl.'s 56.1 Resp. ¶¶ 59, 60, 62.)  Haack also testified that he was unaware why the wet floor sign was placed in the Seafood Department but that the sign was sometimes "split" between the two seafood display cases as a precautionary measure "just in case any water was tracked out."  (Haack Dep. 62:2–67:12; Def.'s Resp. ¶ 74.)  Plaintiff herself did not see the water on the floor, see any water dripping from the seafood display case before she fell, or hear any employee at Defendant's store mention the origin of the alleged water condition.  (Mahoney Dep: 93:7–12, 106:18–108:5, 130:5–131:25; Def.'s 56.1 ¶ 30; Pl.'s 56.1 Resp. ¶ 30.)  Plaintiff has also not presented any evidence that Defendant received complaints about the alleged water condition.  (Mahoney Dep. 130:12–18; Def.'s 56.1 ¶ 43; Pl.'s 56.1 Resp. ¶ 43.)  There are no facts in the record from which a reasonable jury could find that Defendant had actual notice of water on its store floor, and therefore Plaintiff has not established that Defendant had actual notice of water on the floor or that the floor was wet.

The Court is unconvinced by Plaintiff's argument that the "Caution: Wet Floor" sign is sufficient to establish Defendant's actual notice.  Haack testified the "Caution: Wet Floor" sign was sometimes split between to the two seafood display cases as a precautionary measure "just in case any water was tracked out from when the team members were to walk out."  (Haack Dep. 62:2–67:12; Def.'s Resp. ¶ 74.)  Video surveillance footage shows the "Caution: Wet Floor" sign split between the two seafood display cases, approximately sixteen feet away from where Plaintiff fell.  (Video Footage 1:10–1:39; Haack Dep. 71:15–19.)  Thus, Plaintiff has not "link[ed] the placement of the sign to the puddle of . . . water identified by [her] as the cause of

---

melting ice dripping onto the floor in Defendant's Central Avenue store.  (Pl.'s 56.1 Resp. ¶ 61.)
While Haack acknowledged that melting ice has "maybe" dripped onto the sales floor from the seafood display cases, he testified that this was not a regular occurrence and "when it would happen, it would be mornings" around 4:00 or 5:00 A.M.  (Haack Dep. 31:19–32:18.)

her fall." *See Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335, 2009 WL 1955555, at *8 (E.D.N.Y. July 6, 2009) ("[A]bsent facts tending to link the placement of the sign to the puddle of soda and water identified by plaintiff as the cause of her fall, there is no reasonable basis to conclude that defendant was aware of that particular hazard." (citing *Torri v. Big V of Kingston, Inc.*, 537 N.Y.S.2d 629, 631 (App. Div. 1989))); *Alger v. Von Maur, Inc.*, No. 19-CV-6698, 2021 WL 1966773, at *4 (W.D.N.Y. May 17, 2021) (finding that a wet floor sign and defendant's "acknowledgment that the cleaning did not make the floor wet[] demonstrate[d] a more general awareness by [d]efendant that floors may become wet" and was "simply insufficient to establish actual notice"); *Bogery v. United States*, No. 17-CV-6996, 2018 WL 4265901, at *4 (S.D.N.Y. Sept. 6, 2018) (finding that defendant had no evidence of actual notice because, although an employee "placed a [wet floor] sign in the area of the alleged puddle . . . . [n]othing in the record suggests that the sign was placed there in response to a complaint that [d]efendant received or because an employee saw the alleged puddle").

Plaintiff's arguments that the instant case is analogous to *Rosado* and *Hamilton* are misplaced. (Pl.'s Opp'n 7–8); *Rosado v. Phipps Houses Servs., Inc.*, 940 N.Y.S.2d 866, 866 (App. Div. 2012); *Hamilton v. 3339 Park Dev. LLC*, 70 N.Y.S.3d 484, 485 (App. Div. 2018). In *Rosado*, the plaintiff "slipped and fell in a puddle located on an exterior landing" outside of the defendants' building. *Rosado*, 940 N.Y.S.2d at 866. The court found that the presence of two caution cones placed "against the wall, to [plaintiff's] right and left, as she exited, but not in the area of the liquid condition" raised an issue of fact because "the defendants' witness admitted that they would place such caution cones to alert others to a slippery condition and plaintiff denied that the cones were being used to prop open a door, as had been alleged by defendants' witness." *Id*. However, unlike the plaintiff's denial that the two caution cones in *Rosado* were a

18

door prop, Plaintiff has not presented any evidence that the one "Caution: Wet Floor" sign in Defendant's Central Avenue store was being used for a purpose other than the one Defendant's witness had alleged — as a precautionary measure "just in case any water was tracked out." (Haack Dep. 62:2–67:12; Def.'s 56.1 Resp. ¶ 74.)  Similarly, in *Hamilton*, the court found that issues of fact existed as to whether defendants had notice of the hazardous condition where defendant had a "practice to place wet floor signs on areas near spilled liquids" and there was no "evidence that the wet floor sign was deployed merely as a precautionary measure" or deployed by someone who was not an employee.  *Hamilton*, 70 N.Y.S.3d at 485.  Unlike the absence of evidence that the wet floor sign in *Hamilton* was a precautionary measure, ASTL Haack testified that a "Caution: Wet Floor" sign was placed in between the two seafood display cases in Defendant's Seafood Department as a precautionary measure.  (Haack Dep. 62:2–67:12; Def.'s Resp. ¶ 74.)

Accordingly, Plaintiff has failed to show that Defendant had actual notice of a hazardous condition.  *See Leandro v. Wal-Mart Supercenter Store #2104*, No. 19-CV-2108, 2021 WL 2742622, at *8 (S.D.N.Y. June 30, 2021) (granting summary judgment to defendants where there was "no evidence that [d]efendants were aware of the dangerous condition before the accident"); *Strass*, 2016 WL 3448578, at *4 (granting summary judgment where "[a]side from conclusory references to 'actual notice,' [p]laintiffs d[id] not identify any evidence that would support a finding that [defendant] was, in fact, aware of the condition that allegedly caused [plaintiff's] fall").[15]

---

[15]  Plaintiff accuses Defendant of spoliation of evidence by arguing that Defendant's "assistant manager made a conscious decision not to save footage from that day aside from the moments shortly before and after Plaintiff fell" and because the footage of when the caution sign was first placed is unavailable.  (Pl.'s Opp'n n.1.)  Defendant's witness, Keith Haack,

## 2.    Defendant did not have constructive notice of a hazardous condition

Defendant argues that Plaintiff has not established that it had constructive notice of the alleged water spill because it was not visible and apparent and because it was not present for a sufficient length of time.  (Def.'s Mem. 12–17.)  First, Defendant argues that Plaintiff "conceded that the water she slipped upon was not visible to her until after she slipped" and "[w]as 'clear.'" (*Id.* at 13–14.)  Second, Defendant argues that "[e]ven assuming that the subject water in the present action was visible and apparent to [P]laintiff," Plaintiff cannot establish the water was present for a sufficient length of time because "she did not see water on the floor anywhere in the store."  (*Id.* at 15.)  In support, Defendant argues that while it need not demonstrate it performed regular maintenance, Marshon Harris, a maintenance team member at Defendant's Central Avenue store, "perform[ed] an inspection of the floors in the seafood department at 7:02 [P.M.], a mere [eleven] minutes prior to plaintiff's slip and fall accident" and "f[ound] no liquid, substance or hazard in the area at such time."  (*Id.* at 17 (emphasis omitted).)  Defendant contends that "[i]t is well-established that [eleven] minutes is insufficient as a matter of law to charge Whole Foods and/or its employees with constructive notice."  (*Id.*)  Defendant also argues that Plaintiff's reliance on photographs of the Seafood Department that were taken "[nine] months to [twelve] months after the date of her accident" is misplaced because they provide "no evidence at all of any recurring condition in the area where her accident occurred as of the date

---

downloaded video footage that "included periods of time prior to [Plaintiff's] incident and subsequent to [her] incident, as well as the incident itself."  (Aff. of Keith Haack ("Haack Aff.") ¶ 8, annexed to Levine Decl., Docket Entry No. 21-10; *see generally* Video Footage 00:00–2:06.)  Haack asserts that the video footage in Defendant's Rule 26 Disclosure "is a true and accurate copy of the video footage [he] downloaded in the course of [his] duties on July 21, 2019" and "has not been altered."  (Haack Aff. ¶ 12.)  Accordingly, there is no evidence in the record he consciously omitted the footage of when the sign was placed or that Defendant modified the footage to exclude the sign placement.

of the incident." (Def.'s Reply 9.)

Plaintiff argues that Defendant had constructive notice because the slip hazard was a recurring condition and because it failed to conduct a reasonable inspection. (Pl.'s Opp'n 11–17.) First, Plaintiff argues that the water was a recurring condition because the ice in the seafood display cases is designed to melt into a floor drain and photographs of Defendant's Seafood Department show "puddles," "discoloration," "grime," and "calcification" from water accumulating in the area where Plaintiff fell. (*Id.* at 12–13.) Plaintiff contends that Defendant "was aware that a wet floor in the Seafood Department was a recurring condition" because it "partially covers the area in mats" in anticipation of a slip hazard, because water could be tracked out from behind the display cases, and because Defendant's witness, Keith Haack, described the area behind the seafood display case as "[g]enerally wet." (*Id.* at 12–13 (alteration in original).) Plaintiff argues that the wet floor sign "could have been placed in anticipation of a wet floor in the Seafood Department." (*Id.* at 13.) Second, Plaintiff argues that Defendant's inspection of the Seafood Department "roughly [ten] minutes before [her] f[a]ll . . . tells us nothing" because the Gleason Inspection Log "does not provide a way for employees to note anything about the sign or the wet floor." (*Id.* at 15.)

"To prove liability based on constructive notice, the danger must have been 'visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it.'" *Nussbaum*, 603 F. App'x at 12 (quoting *Lemonda v. Sutton*, 702 N.Y.S.2d 275, 276 (App. Div. 2000)); *see also id.* at 12–13 (affirming a district court's grant of summary judgment without reaching the question of whether the hazard existed for a sufficient length of time because the hazard was determined not to be visible and apparent); *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 323–24 (E.D.N.Y. 2014) (granting summary

judgment where the plaintiff could only prove that plastic lid was visible and apparent, but could not prove that it existed for a sufficient length of time); *Kirbaran*, 720 F. Supp. 3d at 277 ("Courts routinely find no material issue of fact as to constructive notice where . . . a slip-and-fall plaintiff describes the substance on which she fell, but 'provides no guidance regarding its duration on the floor.'" (quoting *Gisser v. Wal-Mart Stores East, LP*, No. 17-CV-5293, 2018 WL 6493101, at *5 (S.D.N.Y. Dec. 7, 2018))).  The plaintiff's burden at this stage of the proceedings is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that the defect was both visible and apparent and that it existed for a sufficient length of time prior to the accident.  *See Tenay*, 281 F. App'x at 13 (holding that "the district court did not err in relying on [the plaintiff's] failure to adduce evidence regarding the elements of his [negligence] claim in granting [summary judgment]"); *Yahya v. United States*, No. 21-CV-375, 2024 WL 4894791, at *6–7 (W.D.N.Y. Nov. 25, 2024) (denying the defendant's summary judgment motion because of the plaintiff's testimony that "the ice was visible because there was snow 'everywhere' at the time of his fall and because he saw snow or ice before he slipped and fell," "coupled with the proffered expert report" and "lack of evidence of a pre-fall inspection of the premises" created a genuine issue of material fact as to the defendant's constructive notice).  A plaintiff cannot simply prove that the defendant was "generally aware of the existence of the dangerous condition," but must prove that the defendant had "notice of the 'particular condition' at issue." *Dondero v. Chopra & Nocerino LLP*, No. 21-1487, 2022 WL 320967, at *2 (2d Cir. Feb. 3, 2022) (quoting *Taylor*, 121 F.3d at 90); *Kortright-Conklin v. Lowe's Home Ctrs., LLC*, No. 21-CV-1305, 2023 WL 5723855, at *12 (N.D.N.Y. Sept. 5, 2023) ("In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the

defendant had notice of the particular condition at issue." (quoting *Taylor*, 121 F.3d at 90)).

Plaintiff offers no evidence that the alleged hazardous condition was "visible and apparent" and existed "for a sufficient length of time prior to the accident" to permit Defendant to discover and remedy it. *Nussbaum*, 603 F. App'x at 12. Plaintiff testified she did not see the water before her accident and that the water she observed after her accident was "clear." (Mahoney Dep. 66:9–21, 73:14–74:6, 82:9–83:16, 90:18–24, 93:7–12; Def.'s 56.1 ¶¶ 7, 13, 18, 21; Pl.'s 56.1 Resp. ¶¶ 7, 13, 18, 21.) In addition, Plaintiff has not provided any evidence regarding how long the water was present on the floor. (Mahoney Dep. 90:2–5, 106:18–108:5, 130:5–131:25; Def.'s 56.1 ¶ 28; Pl.'s 56.1 Resp. ¶ 28.) Without evidence of visibility of clear water or the length of time it was present, Plaintiff cannot create a triable issue of fact as to whether Defendant's employees should have discovered the water spill and remedied it. *See Kirbaran*, 720 F. Supp. 3d at 278–79 (granting summary judgment where the plaintiff had not proffered "any evidence" indicating how long the hazard was present prior to her accident or that a reasonable inspection would have uncovered its existence); *Strass*, 2016 WL 3448578, at *5 (finding no dispute of material fact where "the record [was] devoid of any evidence establishing the amount of time the liquid was on the floor prior to [the plaintiff's] fall"); *Casierra v. Target Corp.*, No. 09-CV-1301, 2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010) (granting defendant summary judgment on constructive notice where there was "simply no evidence . . . as to how long" the spilled lotion was on the floor). Defendant's policies to place mats in front of the seafood display case and awareness that the area behind the case may be wet are insufficient to sustain Plaintiff's burden because "a 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's fall." *Tenay*, 281 F. App'x at 14 (quoting *Piacquadio v. Recine Realty Corp.*, 84

N.Y.2d 967, 969 (1994)); *see also Goodnough v. Clark*, No. 15-CV-0648, 2017 WL 4326060, at *9 (N.D.N.Y. Sept. 27, 2017) (finding that a defendant's statement that the steps where plaintiff fell "are so old" was "insufficient to create a genuine dispute of material fact . . . because a 'general awareness that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition'"); *Diaz v. Target Corp.*, No. 15-CV-5731, 2017 WL 4358754, at *2 (E.D.N.Y. Sept. 21, 2017) ("A 'general awareness' that a dangerous condition 'may be present' is legally insufficient to charge defendant with constructive notice of the specific condition that caused plaintiff's injuries." (quoting *Silverman v. United States*, No. 04-CV-5647, 2008 WL 1827920 at *14 (E.D.N.Y. Mar. 28, 2008))). Because Plaintiff has "offered neither any evidence that the [hazardous condition] was visible or apparent, nor any evidence suggesting how long the condition had existed prior to [her] fall," she has failed to demonstrate that Defendant had constructive notice of the water spill.[16] *Tenay*, 281 F. App'x at 14.

In addition, Plaintiff's argument that Defendant cannot claim it lacked constructive notice

---

[16] Plaintiff argues that photographs taken nine and twelve months after her fall, showing calcification and discoloration on the floor in the area where she fell, support a finding that Defendant had constructive notice of the recurring condition. (Pl.'s Opp'n 12–13.) Defendant argues that the photos are irrelevant because they are not evidence of "any recurring condition in the area where her accident occurred as of the date of the incident." (Def.'s Reply 9 (emphasis omitted).) Plaintiff's photographs are irrelevant because they are not evidence of Defendant's constructive notice of a hazardous condition at the time of her fall. *See Akter v. Target Corp.*, No. 22-CV-707, 2024 WL 1142387, at *4 (E.D.N.Y. Mar. 15, 2024) (granting summary judgment where "there [was] no evidence that [the] photographs show the condition of the floor at the time of the accident"); *Ricci v. Wal-Mart Stores E., LP*, No. 16-CV-6920, 2018 WL 4308556, at *8 (S.D.N.Y. Sept. 10, 2018) (finding that photographs taken "immediately after [plaintiff] fell on the day of the accident" along with plaintiff's "post-fall observations" were sufficient to raise a genuine dispute of material fact); *DeGiacomo v. Westchester Cnty. Healthcare Corp.*, 743 N.Y.S.2d 548, 549 (App. Div. 2002) ("[P]hotographs may be used to prove constructive notice of an alleged defect shown in the photographs if they are taken reasonably close to the time of the accident, and if there is testimony that the condition at the time of the accident was similar to the condition shown . . . ." (collecting cases)).

because the Gleason Inspection Log "tells us nothing" about whether its maintenance team members properly inspected and maintained its floor misapplies Defendant's burden. (Pl.'s Opp'n 15.) Because Plaintiff's claim is being adjudicated in federal court, Defendant has no *prima facie* burden to offer evidence as to when the Seafood Department was last cleaned or inspected relative to the time when Plaintiff was injured. *See Kirbaran*, 720 F. Supp. 3d at 275 (explaining that New York law, which provides that it is a defendant's burden to "show[] that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence," "has no application [in federal court] in determining [the] burden of proof"); *Larduotsos v. Lowe's Home Improvement*, No. 21-CV-741, 2023 WL 6385721, at \*3 n.4 (E.D.N.Y. Sept. 29, 2023) ("Because the federal burden of proof applies, [p]laintiff had the burden to produce evidence that [defendant] had actual or constructive notice of the alleged defect."); *Leandro*, 2021 WL 2742622, at \*10 (finding no constructive notice where "[p]laintiff offers no evidence regarding when the spill took place"); *Casierra*, 2010 WL 2793778, at \*3 (granting defendant summary judgment on constructive notice where there was "simply no evidence . . . as to how long" the spilled lotion was on the floor). Moreover, the Gleason Inspection Log shows that a maintenance team member at Defendant's Central Avenue store inspected the Seafood Department and found it "clear" of hazards approximately ten or eleven minutes before Plaintiff's fall. (Gleason Inspection Log 18; Customer Incident Report 5); *Ascher v. Target Corp.*, 522 F. Supp. 2d 452, 462 (E.D.N.Y. 2007) (finding that ten minutes was insufficient basis to establish constructive notice); *Lyman v. PetSmart, Inc.*, No. 16-CV-4627, 2018 WL 4538908, at \*8 (S.D.N.Y. Sept. 21, 2018) (finding that, in general, "about 25 to 30 minutes before [p]laintiff fell . . . is insufficient to find that a defendant had constructive notice of the dangerous condition"); *Hagan v. City of New York*, 87 N.Y.S.3d 325, 327 (App. Div.

2018) (finding no constructive notice where the hazard was present for approximately twenty minutes); *Mehta v. Stop & Shop Supermarket Co.*, 12 N.Y.S.3d 269, 271 (App. Div. 2015) (finding that ten to fifteen minutes was an insufficient amount of time to establish constructive notice); *Alami v. 215 E. 68th St., L.P.*, 931 N.Y.S.2d 647, 649 (App. Div. 2011) (finding that ten minutes was insufficient to establish constructive notice).  Further, despite Plaintiff's contention that the Gleason Inspection Log does not allow employees "to note any hazards they encountered or attempted to remedy," one inspection log entry states that a hazard was present in Defendant's men's restroom and that corrective action was taken.  (Pl.'s Opp'n 3; Gleason Inspection Log 17.)  Plaintiff therefore has not produced evidence sufficient to create genuine disputes of fact as to whether Defendant had actual or constructive notice of the alleged hazardous condition. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's negligence claim.

> **d. Order to show cause as to Plaintiff's claim under New York Labor Law section 376**

Defendant only moves for summary judgment on Plaintiff's New York State law negligence claim.  (Def.'s Mem. 8.)  Neither party makes any arguments as to the merits of Plaintiff's claim that Defendant's violation of New York Labor Law section 376 was the proximate cause of her harm.  (*See generally* Def.'s Mem.; Pl.'s Opp'n; Def.'s Reply.)  As discussed *supra*, *see supra* II(c)(i), Plaintiff has not produced evidence sufficient to create genuine disputes of fact as to whether Defendant had notice of the alleged hazardous floor condition that caused her injury.  Based on the Court's finding that Plaintiff fails to show causation, the Court directs Plaintiff to show cause within thirty days of this Memorandum and Order as to why the Court should not dismiss Plaintiff's section 376 claim.  *Sanchez v. Ehrlich*, No. 16-CV-8677, 2018 WL 2084147, at *8 (S.D.N.Y. Mar. 29, 2018) (explaining that "[a]

plaintiff still must establish causation" to prove negligence per se (citing *Dance v. Town of Southampton*, 467 N.Y.S.2d 203, 206 (App. Div. 1983))); *Dance*, 467 N.Y.S.2d at 206 ("Negligence per se is not liability per se, however, because the protected class member still must establish that the statutory violation was the proximate cause of the occurrence.").

### III.   Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment as to Plaintiff's negligence claim.  The Court orders Plaintiff to show cause, in writing, within thirty days of this Memorandum and Order, why the Court should not dismiss her claim under New York Labor Law section 376.

Dated:  February 12, 2025
        Brooklyn, New York

SO ORDERED:

_____
s/ MKB
MARGO K. BRODIE
United States District Judge