UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------

DEBORAH MAHONEY,

                           Plaintiff,                **MEMORANDUM & ORDER**
                                                   21-CV-4127 (MKB)

         v.

WHOLE FOODS MARKET GROUP, INC.,

                           Defendant.

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Deborah Mahoney commenced the above-captioned action against Defendant

Whole Foods Market Group, Inc. ("Whole Foods") on November 30, 2020, in the Supreme

Court of New York, Nassau County, alleging a claim of negligence under New York law and

failure to maintain the safety of a mercantile establishment in violation of New York Labor Law

section 376[1] based on a slip-and-fall incident that occurred while Plaintiff was shopping at a

Whole Foods store in Albany, New York on July 21, 2019.  (Verified Compl. ¶¶ 5–33, annexed

to Notice of Removal as Ex. A, Docket Entry No. 1-1.)  On July 22, 2021, Defendant removed

the action to the Eastern District of New York based on diversity jurisdiction under 28 U.S.C. §

1332.  (Notice of Removal, Docket Entry No. 1.)  On May 9, 2024, Defendant moved for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to Plaintiff's

---

[1] New York Labor Law section 376, located within article 14 of the New York Labor
Law, provides that "[e]very mercantile establishment and restaurant shall be so constructed,
equipped and maintained as to provide reasonable and adequate protection to the lives, health
and safety of all persons employed therein and frequenting the same."  N.Y. Lab. Law § 376.

negligence claim, and Plaintiff opposed the motion.[2]  On February 12, 2025, the Court granted

Defendant's motion for summary judgment on Plaintiff negligence claim and ordered Plaintiff to

show cause as to why the Court should not dismiss her claim under New York Labor Law

section 376 (the "February 2025 Decision").  (Feb. 2025 Decision 27); *Mahoney v. Whole Foods*

*Mkt. Grp., Inc.,* No. 21-CV-4127, 2025 WL 486655, at *10 (E.D.N.Y. Feb 12, 2025).

On March 14, 2025, Plaintiff filed her response to the Court's order to show cause and

sought to clarify that the February 2025 Decision only addressed whether Defendant had actual

or constructive notice, but did not address whether Defendant created a hazard; Defendant

opposed Plaintiff's motion.[3]  For the reasons stated below, the Court dismisses Plaintiff's section

376 claim, clarifies that the February 2025 Decision granted Defendant's motion for summary

judgment on Plaintiff's negligence claim as to the issues of actual and constructive notice, and

now grants summary judgment in favor of Defendant on the issue of creation of the hazard.[4]

---

[2] (Def.'s Notice of Mot. for Summ. J. ("Def.'s Mot."), Docket Entry No. 21; Def.'s
Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def. Mem."), Docket Entry No. 21-1; Pl.'s
Mem. of Law. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Docket Entry No. 22;
Def.'s Reply Mem. in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 24.)

[3] (Pl.'s Mem. in Resp. to Ct.'s Order to Show Cause ("Pl.'s Mem."), Docket Entry No.
27; Def.'s Mem. in Opp'n to Pl.'s Resp. to the Ct.'s Order to Show Cause ("Def.'s Resp.") 2–6,
Docket Entry No. 28; Pl.'s Reply in Supp. of Pl.'s Mem. ("Pl.'s Reply"), Docket Entry No. 30.)

[4] Plaintiff argues that Defendant has "waived and/or forfeited" the issue of creation and
that "[a]t this point in time, Defendant is not entitled to argue creation of hazard because doing
so is tantamount to a second summary judgment motion."  (Pl.'s Mem. 12.)  As explained below,
the Court clarifies that February 2025 Decision addressed only whether Defendant had actual or
constructive notice, the only arguments made by the parties.  (*See generally* Feb. 2025 Decision.)
However, because both sides now present argument as to whether Defendant created the hazard,
and although Plaintiff did not raise the issue of creation prior to Defendant's motion for
summary judgment, the Court exercises its discretion to address whether Defendant created the
hazard.  *See Brown v. City of Syracuse,* 673 F.3d 141, 147 n.2 (2d Cir. 2012) (explaining that
"the district court did not abuse its discretion in deciding successive summary judgment
motions" "given the district court's evidentiary ruling on the motion *in limine* and its effect on
the factual record"); *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.,* No. 22-CV-1138, 2025

## I.    Background

The Court assumes familiarity with the facts as detailed in the February 2025 Decision, and therefore only provides a summary of the pertinent facts, which are undisputed unless otherwise noted.[5]  (*See generally* Feb. 2025 Decision 1–8.)

### a.    The July 2019 accident

On the evening of July 21, 2019, Plaintiff entered Defendant's Central Avenue store to buy fish.  (*See* Dep. of Deborah Mahoney ("Mahoney Dep.") 23:5–24:22, annexed to Decl. of Mitchell B. Levine ("Levine Decl.") as Ex. D, Docket Entry No. 21-7; Pl.'s 56.1 Resp. ¶¶ 1–4, 19.)  According to Plaintiff,[6] she slipped and fell "at the fish stand" at approximately 7:00 P.M.

---

WL 1425691, at *9 (S.D.N.Y. May 16, 2025) (explaining that district courts may permit renewed or successive motions for summary judgment in their discretion (citing *Brown*, 673 F.3d at 147 n.2)); *Those Certain Underwriters at Lloyd's, London v. DVO, Inc.*, No. 19-CV-252, 2021 WL 6137057, at *2 (W.D.N.Y. Dec. 28, 2021) ("In many cases, allowing successive motions for summary judgment is logical, and it fosters the just, speedy, and inexpensive resolution of suits." (citation and internal quotation marks omitted)).

    [5] (Def.'s 56.1 Stmt. ("Def.'s 56.1"), Docket Entry No. 21-2; Pl.'s Resp. to Def.'s 56.1 ("Pl.'s 56.1 Resp."), Docket Entry No. 22-1; Pl.'s 56.1 Counter-Stmt. ("Pl.'s 56.1"), Docket Entry No. 22-1; Def.'s Resp. to Pl.'s 56.1 ("Def.'s 56.1 Resp."), Docket Entry No. 23.)

    [6] Throughout Plaintiff's 56.1 Statement, she admits that she provided certain testimony, or that Keith Haack, an Assistant Store Team Leader in Defendant's store, provided certain testimony.  (*See, e.g.*, Pl.'s 56.1 Resp. ¶¶ 3–4, 49–50.)  Unless otherwise disputed or contradicted by the record, the Court considers these facts uncontested.  *See Blue Castle (Cayman) Ltd. v. Miller*, 772 F. Supp. 3d 416, 421 n.2 (S.D.N.Y. 2025) ("Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact." (quoting *Johnson v. City of New York*, No. 15-CV-6915, 2019 WL 294796, at *10 n.8 (S.D.N.Y. Jan. 23, 2019))); *McCarthy v. Motorola Sols. Inc.*, No. 21-CV-4020, 2024 WL 3965950, at *1 (E.D.N.Y. Aug. 28, 2024) ("Likewise, 'responses that do not point to any evidence in the record that may create a genuine issue of material fact do not function as denials, and will be deemed admissions of the stated fact.'" (quoting *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014))); *Cui v. Fed. Bureau of Investigation*, 551 F. Supp. 3d 4, 15 (E.D.N.Y. 2021) ("Generally, plaintiff['s] failure to respond or contest the facts set forth by the defendants in their . . . 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." (alterations in original) (internal quotation marks omitted) (quoting *Exeter*

in Defendant's store.  (Mahoney Dep. 23:12–24, 45:3–10; Pl.'s 56.1 Resp. ¶¶ 3, 19.)  The parties

agree that Defendant's Central Avenue store fills its seafood display cases with ice, which are

designed to melt into a floor drain.  (Pl.'s 56.1 ¶¶ 63–64; Def.'s 56.1 Resp. ¶¶ 63–64.)  During

the "several minutes" Plaintiff spent in the store prior to her fall, Plaintiff did not see water on

the floor or see any water dripping onto the floor anywhere in the store.  (Mahoney Dep. 24:16–

19, 82:9–83:16, 93:7–12; Pl.'s 56.1 Resp. ¶¶ 4, 7, 13, 18, 21.)  Immediately before her fall,

Plaintiff was standing on a "rug" in front of the fish counter.  (Mahoney Dep. 70:9–18; Pl.'s 56.1

Resp. ¶ 8.)  Plaintiff did not feel any moisture beneath her feet while standing on the rug and

does not recall seeing any footprints or cart tracks in the area where she fell.  (Mahoney Dep.

72:8–20, 99:10–100:16; Pl.'s 56.1 Resp. ¶¶ 11–12, 14.)  In addition, Keith Haack, an Assistant

Store Team Leader at Defendant's store, was unaware of "any customers who slipped on water

or melting ice in the area of the seafood cases" prior to Plaintiff's accident "or any leaks from the

seafood display cases in the area of [P]laintiff's fall."[7]  (Dep. of Keith Haack ("Haack Dep.")

31:19–33:11, 60:13–16, annexed to Levine Decl. as Ex. E, Docket Entry No. 21-8; Def.'s 56.1 ¶¶

60, 62; Pl.'s 56.1 Resp. ¶¶ 60, 62.)

---

*Holdings, Ltd. v. Haltman*, No. 13-CV-5475, 2020 WL 4587533, at *2 n.3 (E.D.N.Y. Apr. 21, 2020))); *Angulo v. Nassau County*, 89 F. Supp. 3d 541, 545 n.1 (E.D.N.Y. 2015) ("Generally, a party's failure to respond or contest the facts set forth by the [moving party] in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." (internal quotation marks omitted) (quoting *Jessamy v. City of New Rochelle,* 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003))).

[7]  Plaintiff mischaracterizes the testimony proffered by Haack.  Plaintiff disputes whether Haack testified that he did not recall regular occurrences of melting ice dripping onto the floor in Defendant's Central Avenue store.  (Pl.'s 56.1 Resp. ¶ 61.)  While Haack acknowledged that melting ice has "maybe" dripped onto the sales floor from the seafood display cases, he testified that this was not a regular occurrence and "when it would happen, it would be mornings" around 4:00 or 5:00 A.M.  (Haack Dep. 31:19–32:18.)

Approximately four or five minutes after she approached the fish counter, Plaintiff took a single step off the rug in front of the counter and immediately fell. (Mahoney Dep. 70:15–18; Pl.'s 56.1 Resp. ¶¶ 8, 9, 15; Video Footage 1:10–1:17, annexed to Levine Decl. as Ex. F, Docket Entry No. 21-9.) As Plaintiff slipped, her body fell to the floor, and she smashed the back of her head and her right shoulder on the floor.[8] (Mahoney Dep. 48:9–50:14; Pl.'s 56.1 ¶ 75.) After her fall, Plaintiff noticed clear water on the floor and that her clothes were wet.[9] (Mahoney Dep. 66:9–21, 73:14–74:6, 90:18–24; Def.'s 56.1 Resp. ¶ 76.) Plaintiff tried to clean up the spill with her foot, but a "pretty big" puddle of water remained on the floor. (Mahoney Dep. 66:24–67:13, 74:16–25; Def.'s 56.1 Resp. ¶¶ 77–79.) The parties dispute whether water was present in the area where Plaintiff fell, and, if so, whether it was visible.[10] (Pl.'s 56.1 Resp. ¶ 22; Def.'s 56.1 Resp. ¶¶ 76–79.) After her fall, Plaintiff did not see any footprints or cart tracks leading in or through the area where she slipped, nor did she see water accumulating on the floor or dripping from the fish counter. (Mahoney Dep. 81:16–19, 93:7–12, 100:7–16.) Plaintiff is not aware of how long the water was on the floor prior to her fall or of anyone complaining to Defendant about water being present on the floor. (*Id.* 90:2–5, 130:12–18.) In addition, no Whole Foods

---

[8] Defendant disputes whether Plaintiff "smashed" her head and right shoulder when she slipped in the Seafood Department and argues that her alleged damages are immaterial to their motion for summary judgment on the liability issue of lack of prior notice. (Def.'s 56.1 Resp. ¶ 75.) According to Plaintiff's deposition testimony, she hit her head and right shoulder when she fell. (Mahoney Dep. 48:5–49:21.)

[9] When asked whether "[t]he water that [she] slipped on was . . . visible," Plaintiff stated that "[she] did not see it before hand." (Mahoney Dep. 66:12–14.)

[10] Defendant provided video surveillance footage, which captures the seconds immediately before and after Plaintiff's fall. (*See generally* Video Footage 00:00–2:06.) Due to the poor quality of the video surveillance footage, the Court does not rely on the video to discern whether water was present in the area where Plaintiff fell. (*See generally* Video Footage 1:10–1:39.)

5

employee or manager mentioned how the water got onto the floor, how long the water had been present, or any chronic issues involving water in Defendant's Seafood Department. (*Id.* 106:18–108:5, 130:5–131:25.) After her fall, a store employee working behind the fish counter informed Haack of Plaintiff's accident. (Haack Dep. 35:13–36:4, 111:8–12.) When Haack arrived,[11] he found no foreign substance on the floor in the area of Plaintiff's fall. (Haack Dep. 104:14–23; Customer Incident Report 5, annexed to Levine Decl. as Ex. C, Docket Entry No. 21-6; Pl.'s 56.1 ¶ 55.) Haack testified that the floor was "spotless" and contained no water, dirt, debris, or other foreign substance. (Haack Dep. 34:8–35:6, 57:7–20; Def.'s 56.1 ¶ 56; Pl.'s 56.1 Resp. ¶ 56.) Haack prepared a Customer Incident Report. (Haack Dep. 99:20–22; Customer Incident Report 5–6; Pl.'s 56.1 Resp. ¶ 53.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025) (quoting Fed. R. Civ. P. 56(a)); *see Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (same) (quoting Fed. R. Civ. P. 56(a)). The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003));

---

[11] The parties dispute whether Haack arrived on the scene of Plaintiff's accident within thirty seconds. (Haack Dep. 139:12–140:7; Pl.'s 56.1 Resp. ¶ 54; Def.'s 56.1 Resp. ¶ 54; Video Footage 1:10–1:41.)

see also *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party." (quoting *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013))).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Lara-Grimaldi v. County of Putnam*, 132 F.4th 614, 633 (2d Cir. 2025) (quoting *Porter v. Dartmouth-Hitchcock*, 92 F.4th 129, 147 (2d Cir. 2024)); *see Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (same) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.*; *Solid 21, Inc. v. Breitling U.S.A., Inc.*, 96 F.4th 265, 276 (2d Cir. 2024) ("The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the trier of fact could reasonably find for the non-movant." (quoting *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996))).  The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000); *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (similar) (first citing *Anderson*, 477 U.S. at 248; and then citing *Garcia*, 706 F.3d at 127, 129; *see also Capitol Recs.*, 125 F.4th at 418 ("[A] genuine dispute as to a material fact precludes summary judgment 'where the evidence is such that a reasonable jury could decide in the non-movant's favor.'" (quoting *Lucente v. County of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020)))).

#### b.    Plaintiff's negligence claims

Plaintiff argues that (1) section 376 provides an implied private right of action for her negligence per se claim, (2) the Court should clarify the February 2025 Decision to reflect that the Court granted summary judgment only as to actual and constructive notice, not common law negligence in its entirety, and (3) that even if the Court considers the issue of creation of the hazard, Plaintiff has established a genuine dispute of material fact as to whether Defendant created the hazard.  (*See generally* Pl.'s Mem.; Pl.'s Reply.)  The Court addresses each argument below.

#### i.    Plaintiff's negligence per se claim

Plaintiff argues that section 376, which provides that mercantile establishments and restaurants must be maintained to protect the "health and safety of all persons employed therein and frequenting the same," provides protections for the injuries she suffered in Defendant's store.  (Pl.'s Mem. at 17.)  First, Plaintiff argues that she is a part of the class of persons section 376 is intended to protect because Defendant, as a mercantile establishment, "violated section 376 because its floor was not kept in safe condition, because it was wet" and that the "head injuries" she suffered are "intuitively a type of harm" resulting from Defendant's failure to maintain its floors.  (*Id.* at 18.)  In addition, Plaintiff argues the word "and" in section 376 "must be interpreted to extend [s]ection 376's protections to 'all persons employed therein [the mercantile establishment] *and* [all persons] frequenting the same.'"  (*Id.* (third alteration in original).)  In support, Plaintiff argues "that 'and' has a distributive (or several) sense as well as a joint sense" and contends that "[c]ontext advises in favor [of] a several *and*" because "[s]ection 376 uses [a several and] at the outset" to state that the section applies to "[e]very mercantile establishment *and* restaurant."  (*Id.* at 18–19 (citations omitted).)  In addition, Plaintiff argues that her testimony that she has been to the store "a few times" "raises a genuine dispute of

material fact as to whether she 'frequent[ed]' Defendant's establishment enough" because "frequenting" "is synonymous with 'visiting'" and requiring her to visit the store a certain number of times would be an "absurd" reading of section 376.  (*Id.* at 22 n.7 & n.8.)  Second, Plaintiff argues that "[s]ection 376's legislative history reflects that its protections were always meant to sweep broadly" because the 1921 and 1924 amendments did not specify the persons the statute was intended to protect.  (*Id.* at 18–19.)  In support, Plaintiff argues that section 376 was formerly "split between two sections" in 1921 — section 375 and section 376 — "each of which impose[d] an absolute command on mercantile establishments, without specification as to the persons protected."  (*Id.* at 19.)  Plaintiff argues that "then-sections 375 and 376 were amended" in 1924 "to add 'or restaurant' after 'mercantile establishment,'" but "continued not to be confined to a particular class of persons."  (*Id.* at 20.)  In addition, Plaintiff argues that the 1947 amendment, which "repeal[ed] then-section 376, renumber[ed] then-section 375 as section 376 and amend[ed] section 376 to read as it does today," supports her conclusion that section 376 "was intended to sweep broadly."  (*Id.* at 20–21.)  In support, Plaintiff relies on the 1947 New York Legislative Annual,[12] which states that then-sections 375 and 376 were amended "to eliminate inconsistencies, duplication and obsolete provisions" since "there [was] no requirement in [then-section 376] which [was] not covered by [then-section 375]."  (*Id.* at 21 (quoting N.Y.S.

---

[12]  "The New York State Legislative Annual memorializes the legislative history and intent of New York State statutes."  (Pl.'s Mem. 20 n.6 (first citing *Nippon Emo-Trans Co. v. Emo-Trans, Inc.*, 744 F. Supp. 1215, 1219 (E.D.N.Y. 1990); and then citing *Kellogg v. Off. of Chief Med. Exam'r of City of New York*, 806 N.Y.S.2d 528, 530 (App. Div. 2005))).

Legislative Annual at 189 (1947)).)  Third, Plaintiff argues that sections 213[13] and 391[14] of the New York Labor Law "are poor guides for the inquiry" of whether section 376 provides a private right of action because the New York Labor Law "is rife with private rights of actions, notwithstanding the labor commissioner's general enforcement powers and a specific or exclusive enforcement provision analogous to [s]ection 391."  (Pl.'s Reply 1.)

Defendant argues that the Court should dismiss Plaintiff's section 376 claim.  (Def.'s Resp. 2.)  First, Defendant argues that section 376 "does not create an express private action" that Plaintiff "can pursue outside of initiating a complaint to the Commissioner of Labor" because section 213 of the New York Labor suggests and section 391 of the New York Labor Law "expressly provides" that only the Commissioner of Labor can assess violations of and enforce rights related to section 376.  (*Id.* at 1–6.)  In support, Defendant argues Plaintiff does not have a private right of action under section 376 because (i) section 213 "sets forth the violations to be assessed by the Commissioner of Labor in connection with non-compliance with 'any provision of the labor law,'" and (ii) section 391, which is in the same chapter and article as section 376, "expressly provides" that the Commissioner of Labor "shall have jurisdiction to enforce the provisions of [Chapter 31] relating to mercantile establishments."  (*Id.* at 3–4.)  Second, Defendant argues that the legislative intent behind section 376 does not "favor[] an

---

[13]  New York Labor Law section 213, located within Article 7, sets forth general provisions pertaining to violations of the New York Labor Law.  *See generally* N.Y. Lab. Law § 213.  Section 213 provides, in relevant part, that "[a]ny person who violates or does not comply with any provision of the labor law . . . [is] guilty of a misdemeanor . . . , provided, however, that if the first offense is a violation of a rule or provision for the protection of the safety or health of employees or persons lawfully frequenting a place to which this chapter applies, the punishment shall be a fine of not more than one hundred dollars or by imprisonment . . . ."  *Id.*

[14]  New York Labor Law section 391, located within Article 14, Chapter 31, provides that "[t]he commissioner shall have jurisdiction to enforce the provisions of this chapter relating to mercantile establishments . . . ."  N.Y. Lab. Law § 391.

implied right" based on three-factor test applied by the New York Court of Appeals.[15]  (*Id.* at 4–6.)  Defendant argues that "notwithstanding [Plaintiff's] diatribe on the grammatical import of the word 'and'" Plaintiff may satisfy the first factor of the test — whether Plaintiff is a "member of the class for whose particular benefit the statute was enacted."  (*Id.* at 5 (internal citation omitted).)  Defendant also argues that Plaintiff fails to satisfy the second and third factors — whether recognition of a private right of action would promote the legislative purpose and be consistent with the legislative scheme.  (*Id.* (quoting *Galante v. Watermark Servs. IV, LLC*, 722 F. Supp. 3d 170, 185–86 (W.D.N.Y. 2024)).)  In support, Defendant argues the legislative history does not favor recognizing a private right of action because section 391, which is "within the very same [a]rticle as [s]ection 376," provides the Commissioner of Labor with jurisdiction over claims "expressly pertaining to mercantile establishments."  (*Id.*)

"[A] violation of a [s]tate [or federal] statute that imposes a specific duty constitutes negligence *per se*."  *Espinoza v. Foundry Workers LLC*, --- F. Supp. 3d ---, ---, No. 24-CV-8046, 2025 WL 2096153, at *5 (E.D.N.Y. July 25, 2025) (citation omitted); *Nassau County Bridge Auth. v. Olsen*, 130 F. Supp. 3d 753, 757 (E.D.N.Y. 2015) ("One way to prove negligence is by alleging the violation of a federal [statute or regulation] or state statute, which constitutes

---

[15]  To determine whether the legislative intent favors an implied private right of action, courts must consider the following three factors: "'(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.'"  *Konkur v. Utica Acad. of Sci. Charter Sch.*, 38 N.Y.3d 38, 41 (2022) (quoting *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (2021)); *Ortiz*, 37 N.Y.3d at 360 (quoting *Sheehy v. Big Flats Community Day, Inc.*, 73 N.Y.2d 629, 633 (1989)); *Sheehy*, 73 N.Y.2d at 633 (explaining that the "test set forth" in *Burns Jackson* is "[o]f central importance" in determining "if a private right of action may fairly be implied" (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 325 (1983))); *see also Uhr ex rel. Uhr v. E. Greenbush Cent. Sch. Dist.*, 94 N.Y.2d 32, 38(1999) ("In *Burns Jackson* . . ., th[e] [New York] Court [of Appeals] articulated the standards that were synthesized into a three-part test in *Sheehy* . . . ." (quoting *Sheehy*, 73 N.Y.2d at 633)).

*negligence per se*"); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005) ("'The violation of federal statutes and regulations is commonly given *negligence per se* effect in state tort proceedings.'" (quoting Restatement (Third) of Torts § 14 Reporters' Note, Cmt. a (Tent. Draft No. 1, Mar. 28, 2001))).  In these cases, establishing the violation of a statute or regulation that imposes a duty "establishes the duty and breach elements of a negligence claim."  *Cretcher v. U.S. Bank N.A.*, No. 19-CV-6764, 2021 WL 1062057, at *3 (E.D.N.Y. Mar. 19, 2021) (first citing *Elliott v. City of New York*, 95 N.Y.2d 730, 734 (2001); and then citing *Sanchez v. Ehrlich*, No. 16-CV-8677, 2018 WL 2084147, at *8 (S.D.N.Y. Mar. 29, 2018)); *see also Betts v. Sixty Lower E. Side, LLC*, No. 20-CV-4772, 2023 WL 5352334, at *6 (S.D.N.Y. Aug. 21, 2023) ("'In New York, the 'unexcused omission' or violation of a duty imposed by statute for the benefit of a particular class 'is negligence itself.'" (quoting *Chen v. United States*, 854 F.2d 622, 627 (2d Cir. 1988) (emphasis omitted)), *appeal withdrawn*, No. 23-1289, 2024 WL 1152438 (2d Cir. Jan. 22, 2024), *and motion to certify appeal denied*, No. 20-CV-4772, 2024 WL 3104323 (S.D.N.Y. June 24, 2024); *In re GE/CBPS Data Breach Litig.*, No. 20-CV-2903, 2021 WL 3406374, at *10 (S.D.N.Y. Aug. 4, 2021) ("[T]he unexcused omission or violation of a duty imposed by statute for the benefit of a particular class *is* negligence itself." (citing *Timperio v. Bronx-Lebanon Hosp. Ctr.*, 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019))).  Violation of a statute may constitute negligence *per se* "if a statute is designed to protect a class of persons, in which the plaintiff is included, from the type of harm which in fact occurred as a result of its violation[.]"  *Rule v. Braiman*, No. 23-CV-1218, 2024 WL 4042135, at *19 (N.D.N.Y. Sept. 4, 2024) (quoting *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 71 (S.D.N.Y. 2022)); *Jordan v. Tucker*, No. 13-CV-6863, 2017 WL 2223918, at *12 (E.D.N.Y. May 19, 2017) (same) (quoting *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995)).  However, "[a] plaintiff still must establish causation."

*Sanchez*, 2018 WL 2084147, at *8 (citing *Dance v. Town of Southampton*, 467 N.Y.S.2d 203, 206 (App. Div. 1983)); *Dance*, 467 N.Y.S.2d at 206 ("Negligence per se is not liability per se, however, because the protected class member still must establish that the statutory violation was the proximate cause of the occurrence.").

According to New York Labor Law section 376, "[e]very mercantile establishment and restaurant shall be so constructed, equipped and maintained as to provide reasonable and adequate protection to the lives, health and safety *of all persons employed therein* and *frequenting* the same."   N.Y. Lab. Law § 376 (emphasis added).  Section 376 also provides that "[e]very room in a mercantile establishment or restaurant and every part thereof and all fixtures therein shall at all times be kept sanitary," and that "[f]loors shall be kept in safe condition."  *Id.* A "mercantile establishment" is "a place where one or more persons are employed in which goods, wares or merchandise are offered for sale . . ." N.Y. Lab. Law § 2(11).  "Frequent" means "to associate with, be in, or resort to often or habitually."  Merriam-Webster's Dictionary (2025), https://www.merriam-webster.com/dictionary/frequenting (last visited Sept. 10, 2025); *see also United States v. Ochoa*, 932 F.3d 866, 869 (9th Cir. 2019) ("The dictionary defines the term 'frequent' as 'to visit often,' 'go to often,' 'be in often,' 'to be a regular customer of,' and 'to associate with, be in or resort to often or habitually.'" (citation omitted)).  The New York Court of Appeals has not yet ruled on whether a violation of section 376 is negligence *per se*.[16]

---

[16]  Plaintiff cites to no cases that have definitively decided the issue of whether a plaintiff has a private right of action under section 376, (*see* Pl.'s Mem.; Pl.'s Reply), and the Court is not aware of any.  While several cases have decided other issues related to section 376, all of these cases were decided on unrelated grounds.  *See, e.g.*, *Senk v. City Bank Farmers Tr. Co*, 108 F.2d 630, 632 (2d Cir. 1940) (finding that section 376 "[did not] apply to the cause of action asserted by the plaintiff because [s]ection 316 does not include it among those sections imposing liability upon owners of premises who have parted with possession."); *Whittington v. Champlain Ctr. N. LLC*, 999 N.Y.S.2d 231, 234 (App. Div. 2014) ("The general provisions of [New York] Labor Law [section] 376 are not sufficient . . . to establish a duty of an out-of-possession landlord to an

Accordingly, the Court must first determine whether section 376 provides an implied private right of action.[17] *Lazar v. Int'l Shoppes, LLC,* No. 24-CV-4170, 2025 WL 1475627, at *3 n.1 (E.D.N.Y. May 22, 2025) (explaining that "[w]hile plaintiff does not allege negligence per se, any such claim would fail, because neither [section 5 of the Fair Trade Commission Act nor the Health Insurance Portability and Accountability Act] provide[] a private right of action."); *In re Canon U.S.A. Data Breach Litig.*, No. 20-CV-6239, 2022 WL 22248656, at *8 (E.D.N.Y. Mar. 15, 2022) ("[I]n order to warrant a finding of negligence *per se* for a statutory violation, the statute must evidence an intention, express or implied, that from disregard of its command a

_____

employee of a lessee injured on premises controlled by the lessee."); *Mastrokostas v. 673 Madison, LLC*, 970 N.Y.S.2d 82, 84 (App. Div. 2013) (finding that the lower court properly denied the plaintiff's cross-motion for leave to amend to allege a section 376 violation "since the proposed amendment was patently devoid of merit."); *Miki v. 335 Madison Ave., LLC*, 924 N.Y.S.2d 310, 310 (Sup. Ct. 2011) (granting the defendants' motion for summary judgment because section 376 was "inapplicable to the case at bar and [the] plaintiff [did] not oppose or even address this branch of the motion"), *aff'd*, 940 N.Y.S.2d 38 (2012); *Castleton v. Broadway Mall Properties, Inc.*, 837 N.Y.S.2d 732, 734 (App. Div. 2007) (finding that the plaintiff did not assert a viable cause of action for a section 376 violation because the plaintiff asserted the claim "only in the bill of particulars and not in the complaint"); *Torres v. Binghamtom Giant Markets, Inc.*, 801 N.Y.S.2d 689, 690 (Sup. Ct. 2005) (dismissing the plaintiff's complaint alleging common law negligence and violations of New York Labor Law sections 200 and 376 because the defendant "did not have the contractual or other actual authority to control or supervise the activity bringing about plaintiff's injury"); *Siracuse v. Race Off. Equip. Co.*, 718 N.Y.S.2d 921, 921 (App. Div. 2000) (explaining that although the "[p]laintiffs alleged in the . . . complaint that [the] defendants violated [sections 200 and 376 of the New York Labor Law]" the bill of particulars stated that they "no longer claim any statutory violations on the part of [the] defendant"); *In re Ferrara*, 10 N.Y.2d 1, 10 n.2 (1961) (noting that the word "establishment" is used in "a number of [New York Labor Law] provisions other than those in article 18," including section 376, "connotes 'place' or 'geographic situs'").

[17]  Because Plaintiff explains that "[w]here as here, the [New York] [l]egislature clearly contemplated administrative enforcement of the statute, '[t]he question then becomes whether, in addition to administrative enforcement, an implied right of action would be consistent with the legislative scheme," the Court understands Plaintiff to concede that section 376 contains no express private right of action and therefore only examines whether section 376 contains an implied private right of action.  (Pl.'s Reply 2 (citation omitted).)

liability for resultant damages shall arise which would not exist but for the statute." (quoting *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at \*10)).

"In New York, where a statute does not make express provision for a private remedy, such a remedy may be had only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Bhatnagar v. New Sch.*, No. 22-363, 2023 WL 4072930, at \*4 (2d Cir. June 20, 2023) (quoting *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (2021)); *Galante*, 722 F. Supp. 3d at 185 (explaining that "a plaintiff can seek relief for a violation of [a] statute 'only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history'" (quoting *Konkur v. Utica Acad. of Sci. Charter Sch.,* 38 N.Y.3d 38, 40–41 (2022))). "To evaluate whether the legislative intent favors such implied private rights of action, [the New York Court of Appeals has] identified three relevant factors: '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.'" *Bhatnagar*, 2023 WL 4072930, at \*4 (quoting *Ortiz,* 37 N.Y.3d at 360); *Konkur*, 38 N.Y.3d at 41 ("As we recently reaffirmed in *Ortiz v. Ciox Health LLC,* we apply a three-factor test to determine whether the legislative intent favors an implied right." (citing *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (2021))); *Ortiz*, 37 N.Y.3d at 360 (explaining that the court was "[a]pplying the *Sheehy* factors" in order to "conclude that no private cause of action exist[ed] for violations of [a state public health law]"); *Sheehy v. Big Flats Cmty. Day, Inc.,* 73 N.Y.2d 629, 633 (1989) (explaining that there are three "essential factors to be considered" in determining "if a private right of action may fairly be implied"). "All three factors must be present before an implied private right of action will be recognized[.]"

*Bhatnagar*, 2023 WL 4072930, at *4; *Galante*, 722 F. Supp. 3d at 186 (explaining that the court will not recognize an implied right of action unless all three factors are present).

In order to determine "whether the plaintiff is one of the class for whose particular benefit the statute was enacted," courts first examine the statute's language to determine whether the plaintiff is "clearly within th[e] category" covered by the statute. *Sheehy,* 73 N.Y.2d at 634 (finding that the plaintiff, a minor, was part of the class whose particular benefit a statute criminalizing the provision of alcoholic beverages to "those under legal purchase age" was enacted because she was "clearly within this category"); *see also Rhodes v. Herz*, 920 N.Y.S.2d 11, 17 (App. Div. 2011) ("The first prong of the abovementioned test is often the simplest to resolve, since whether the proponent of an implied private right of action is within the class for whose benefit a statute was enacted is usually manifest from the language itself.").  "[C]ourts post-*Sheehy* have held that potentially 'deriv[ing] a benefit from the statutory program at issue' is not enough for plaintiffs to constitute part of the class for whose particular benefit the provision was enacted."  *Araneta v. J.P. Morgan Chase Bank, N.A.*, No. 22-CV-2346, 2023 WL 2601501, at *4 (S.D.N.Y. Mar. 22, 2023) (citations omitted) (collecting cases); *Stray from Heart, Inc. v. Dep't of Health & Hygiene of City of New York*, 20 N.Y.3d 946, 948 (2012) (explaining that the plaintiff must "belong to the class for whose specific benefit the law was enacted"); *Flagstar Bank. FSB v. State*, 978 N.Y.S.2d 266, 266 (App. Div. 2013) (explaining that the plaintiffs were not "particular" beneficiaries of the statute even though they "undoubtedly st[ood] to benefit" from the statute).

Second, courts consider "whether recognition of a private right of action would promote the legislative purpose."  *Sheehy*, 73 N.Y.S.2d at 633.  "This analysis is itself 'a two-part inquiry,' which requires plaintiff to establish '(1) what the [l]egislature was seeking to accomplishing in enacting the statute; and (2) whether a private right of action promotes that

objective.'" *Araneta*, 2023 WL 2601501, at *6 (citing *Rhodes*, 920 N.Y.S.2d at 17–18); *Rhodes*, 920 N.Y.S.2d at 17–18 (citing *Uhr ex rel. Uhr v. E. Greenbush Cent. Sch. Dist.*, 94 N.Y.2d 32, 38 (1999)); *Uhr*, 94 N.Y.2d at 38 ("[T]he second prong is itself a two-part inquiry. We must first discern what the Legislature was seeking to accomplish when it enacted the statute, and then determine whether a private right of action would promote that objective.").

"[T]he third, 'most important' factor" is whether "creation of a right would be consistent with the legislative scheme." *Bhatnagar*, 2023 WL 4072930, at *4 (citation omitted); *Ortiz*, 37 N.Y.3d at 360 (explaining that "[t]he third factor is the most important"); *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70 (2013) ("We have repeatedly recognized the third as the most important . . ."); *Sheehy*, 73 N.Y.S.2d at 634 ("In addition to determining whether [the plaintiff] was within the intended protected class and whether permitting her claim would advance the legislative goal, we must 'most importantly, [determine] the consistency of doing so with the purposes underlying the legislative scheme." (citing *Burns Jackson*, 59 N.Y.S.2d at 325)). The third factor "'typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others — a choice that should be respected by the courts.'" *Bhatnagar*, 2023 WL 4072930, at *4 (quoting *Ortiz*, 37 N.Y.3d at 360–61); *Ortiz*, 37 N.Y.3d at 361 ("[T]he presence of alternative enforcement mechanisms is frequently determinative."). "Thus, regardless of its consistency with the basic legislative goal, private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the legislature or with some other aspect of the over-all statutory scheme." *Araneta*, 2023 WL 2601501, at *6 (quoting *Cruz*, 22 N.Y.3d at 70–71); *Rhodes*, 920 N.YS.2d 10 ("[T]he relevant inquiry is whether the private right of action coalesces smoothly with the legislative goal, in particular with its enforcement mechanism, or whether it is completely at odds with the same." (citing *Uhr,* 94 N.Y.S.2d at 40)); *see also Bhatnagar*, 2023 WL 4072930, at *4 ("In that vein, [the New York

Court of Appeals has] held that public and private avenues of enforcement do not always harmonize with one another.  Both may ultimately, at least in theory, promote statutory compliance, but they are born of different motivations and may produce a different allocation of benefits owing to differences in approach." (quoting *Ortiz*, 37 N.Y.3d at 360–61)).

Plaintiff does not satisfy the first factor because she is not "one of the class for whose particular benefit the statute was enacted."  *Bhatnagar*, 2023 WL 4072930, at *4.  The first paragraph of section 376 states that "[e]very mercantile establishment and restaurant shall be so constructed, equipped and maintained" so as to protect the "health and safety of all persons employed therein and frequenting the same."[18]  N.Y. Lab. Law § 376.  Although Defendant's store is a "mercantile establishment" because it is a "place . . . in which goods, wares or merchandise are offered for sale," Plaintiff is not one of a class for whose particular benefit the statute was enacted because she did not "frequent[] the same" mercantile establishment.  N.Y. Lab. Law §§ 2(11), 376 ("'Mercantile establishment' means a place where one or more persons are employed in which goods, wares or merchandise are offered for sale and includes a building, shed or structure, or any part thereof, occupied in connection with such establishment.").  Plaintiff testified that she visited Defendant's store "probably a few times" before her accident on July 21, 2019.  (Mahoney Dep. 132:3–9); N.Y. Lab. Law § 376; *Jody L. B. v. Comm'r of Soc. Sec.*, No. 21-CV-734, 2022 WL 1541461, at *10 (N.D.N.Y. May 16, 2022) ("The word 'few' should be defined using its ordinary meaning, e.g., a small number."); Merriam-Webster's Dictionary (2025), https://www.merriam-webster.com/dictionary/few (last visited Sept. 26,

---

[18]  Section 2 of the New York Labor, which provides definitions applicable to section 376, defines "mercantile establishment" as "place where one or more persons are employed in which goods, wares or merchandise are offered for sale and includes a building, shed or structure, or any part thereof, occupied in connection with such establishment" but does not define "frequenting."  N.Y. Lab. Law § 2(11).

2025) (defining "few" as "at least some but indeterminately small in number"). Because Plaintiff did not visit the store "often" or "habitually," Plaintiff did not "frequent[]" Defendant's mercantile establishment. N.Y. Lab. Law § 376 (providing protections to "all persons . . . frequenting the same" mercantile establishment); *v. Ochoa*, 932 F.3d at 869 (explaining that "frequent" means "'to visit often,' 'go to often,' 'be in often,' 'to be a regular customer of,' and 'to associate with, be in or resort to often or habitually.'" (citation omitted)); Merriam-Webster's Dictionary (2025), https://www.merriam-webster.com/dictionary/frequenting (last visited Sept. 26, 2025) (defining the verb "frequent" as "to associate with, be in, or resort to often or habitually"); The Law Dictionary (2025), https://thelawdictionary.org/frequent/ (last visited Sept. 26, 2025) (defining "frequent" as "to visit often; to resort to often or habitually"). Thus, because Plaintiff is not a person who "frequent[ed]" Defendant's "mercantile establishment," N.Y. Lab. Law § 376, she does not fall within the class of persons for whose benefit section 376 was enacted. *See Araneta*, 2023 WL 2601501 at *4 (explaining that potentially "deriv[ing] a benefit from the statutory program at issue" is insufficient for plaintiffs to constitute "part of the class for whose particular benefit the provision was enacted"); *see also Davis v. Citibank, N.A.*, 984 N.Y.S.2d 388, 392 (2014) ("[A]though financially struggling homeowners may derive a benefit from [the home affordable modification program], that program was not promulgated solely for their particular benefit." (citation omitted)).

Plaintiff relies on Part 23 of Title 12 of the Compilation of Codes, Rules and Regulations of the State of New York ("Part 23") to argue that "frequenting" means "visiting." (Pl.'s Mem. 22 n.7 (quoting 12 N.Y.C.R.R. § 23-1.4(b)(39)).) Part 23-1.4 defines "[p]ersons lawfully frequenting" as "[a]ny person exercising a lawful right of presence or passage in any area, including persons on a public sidewalk, street or highway." 12 N.Y.C.R.R. § 23-1.4(b)(39). However, Part 23 only provides definitions "for the purposes of the New York State Department

of Labor . . . relating to 'Protection in construction, Demolition, and Excavation Operations,'" 12 N.Y.C.R.R. §§ 23-1.1, 23-1.4(b)(39), and not definitions relating to section 376, which is located within Chapter 31 of the New York Labor Law and pertains to sanitation of mercantile establishments and restaurants. N.Y. Lab. Law § 2 (providing the definitions applicable to Chapter 31 of the New York Labor Law); *see also id.* § 376. Plaintiff also relies on *Security & Exchange Commission v. Rosenthal* to argue that the Court should not interpret the word "frequenting" in section 376 "to require a threshold number of visits in a certain time period" because that "would yield absurd results: denying employees on their first day 'safe' floors." (Pl.'s Mem. 22 n.7 (*Sec. & Exch. Comm'n v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011)).) In *Rosenthal*, the Second Circuit explained that it would be "absurd, to adopt the [Security and Exchange Commission]'s interpretation" regarding a statute authorizing civil penalties for insider trading because its interpretation "would permit a violator who made *no* profit to face a penalty of up to $120,000 per violation, . . . while a violator who profited by $1000 would be exposed to a penalty of no more than $3000." *Rosenthal,* 650 F.3d 156, 159–60, 162–63 (2d Cir. 2011) However, the Court's interpretation of section 376 — that section 376 protects "all persons employed" in mercantile establishments *and* "all persons . . . frequenting the same," N.Y. Lab. Law § 376 — merely "give[s] effect" to the impact of the verb "frequenting" on "all persons" rather than suggesting that a new employee would fall outside section 376's protections. *In re Maresca*, 982 F.3d 859, 863 (2d Cir. 2020) (explaining that courts must "give effect . . . to every clause and word of the statute."); *Rosenthal,* 650 F.3d 156, 162(2d Cir. 2011) ("It is, to be sure, well-established that '[a] statute should be interpreted in a way that avoids absurd results.'" (quoting *United States v. Venturella,* 391 F.3d 120, 126 (2d Cir. 2004))).

Accordingly, because Plaintiff is not one of the class for whose particular benefit section 376 was enacted, the Court dismisses her negligence per se claim premised on Defendant's

alleged violation of section 376.[19] *Rand*, 637 F. Supp. 3d at 71 (explaining that violation of a statute may constitute negligence *per se* "if a statute is designed to protect a class of persons, in which the plaintiff is included, from the type of harm which in fact occurred as a result of its violation" (quoting *German by German*, 896 F. Supp. at 1396)).

### ii.    Clarification regarding the February 2025 Decision

Plaintiff seeks to clarify the Court's February 2025 Decision "to reflect that Defendant warranted summary judgment only as to notice, and not common law negligence in its entirety," and that even if Defendant had not "waived the issue" of creation of the hazard "by choosing not to move on it," "the Court must then find that a genuine dispute of material fact on the issue [of creation of the hazard] precludes summary judgment" on her negligence claim.  (Pl.'s Mem. 12; Pl.'s Reply 11.)  Plaintiff argues that she "is still entitled to prove, at trial, common law negligence 'breach via Defendant's creation of the hazard" and that Court should have granted "summary judgment only as to the issue of notice," because "Defendant, the movant, . . . never addressed whether it 'created the dangerous condition.'"  (Pl.'s Mem. 8, 11.)  First, Plaintiff argues that Defendant failed to move on creation of the hazard with respect to her common law negligence claim.  (*Id.* at 8.)  In support, Plaintiff argues that "Defendant did *not* point to the absence of evidence as to whether it . . . created the dangerous condition," but rather "pointed to the absence of evidence *only* with respect to . . . actual and . . . constructive notice."  (*Id.* at 9.)  Plaintiff also argues that "the Court observed . . . on several occasions" that Defendant only pointed to the absence of evidence as to actual or constructive notice, that "Defendant's

---

[19]  Because "[a]ll three factors must be present before an implied private right of action will be recognized," the Court declines to address whether an implied right of action would promote the legislative purpose and be consistent with the legislative scheme.  *See Bhatnagar v. New Sch.*, No. 22-363, 2023 WL 4072930, at *4 (2d Cir. June 20, 2023); *Galante v. Watermark Servs. IV, LLC*, 722 F. Supp. 3d 170, 186 (W.D.N.Y. 2024) (explaining that the court will not recognize an implied right of action unless all three factors are present).

memoranda analyze only notice," and that "Plaintiff expressly identified that Defendant's 'notice is the only issue raised by its summary judgment motion.'" (*Id.* at 9–10 (citations omitted).) Plaintiff notes that, although Defendant mentions creation of the hazard as "Plaintiff's anticipated contention," Defendant's statement, which "lack[s] citation to evidence and caselaw," "is not analysis in earnest" that entitles it "to summary judgment on whether [it] 'created' or 'caused' the hazard." (*Id.* at 10–11 (citations omitted).) Second, Plaintiff argues that "[a]t this point in time, Defendant is not entitled to argue creation of hazard because doing so is tantamount to a second summary judgment motion." (*Id.* at 12 (citing *Dobrosmylov v. DeSales Media Grp., Inc.*, No. 19-CV-5122, 2021 WL 2779303, at *5 (E.D.N.Y. July 2, 2021)).)

Defendant argues that the Court's "summary dismissal of [P]laintiff's entire Complaint is absolute and unimpeachable." (Def.'s Resp. 8.) First, Defendant argues that Plaintiff failed to plead "cause and create" in her Complaint. (*Id.* at 7–10.) In support, Defendant argues that Plaintiff "pleads merely boilerplate contentions of negligence in the Complaint," "merely alleging that [Defendant's] store 'was in a dangerous, defective, hazardous and unsafe condition'" and that she "was caused to sustain serious bodily injury . . . due to the negligence, recklessness, careless and culpability of [D]efendant." (*Id.* at 8 (quoting Compl. ¶¶ 14, 19).) Second, Defendant argues that Plaintiff failed to "develop any argument in opposition to [Defendant's] motion for summary judgment on the issue of alleged creation of the subject hazardous condition" despite "[her] burden to do so in [f]ederal [c]ourt." (*Id.* at 8.) In support, Defendant argues that Plaintiff "failed to offer evidence of any kind" at summary judgment "to demonstrate that [Defendant] took any deliberate and intentional affirmative act which resulted in the creation of the hazardous condition which [she] contends caused her injury." (*Id.* at 10.)

As the Court stated in the February 2025 Decision, where an action has been removed from New York state court on the basis of diversity of citizenship between the parties, the claims

are governed by New York substantive law and federal procedural law.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Windward Bora LLC v. Sotomayor*, 113 F.4th 236, 241 (2d Cir. 2024) (noting that where "subject-matter jurisdiction is based on diversity . . . 'we must predict how [New York's] highest court would resolve'" these issues" (second alteration in original)); *Covington Specialty Ins. Co. v. Indian Lookout Country Club*, 62 F.4th 748, 752 (2d Cir. 2023) (noting that "since the district court was sitting in diversity, it was bound to apply the substantive law of the forum state — here, New York" (alterations, internal quotation marks, and citation omitted)); *Sarkees v. E. I. Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021) ("In a diversity of citizenship case, state law, here New York's, applies to substantive issues, and federal law applies to procedural issues.").  The moving party's burden of proof on a summary judgment motion is procedural, and under the distinction created by *Erie Railroad Co. v. Tompkins* and its progeny, is subject to federal law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Tenay v. Culinary Tchrs. Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (applying the federal summary judgment standard to a New York slip-and-fall case); *Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 273 (S.D.N.Y. 2024) ("Allocation of the burden of proof at summary judgment is a matter of procedural law, which . . . is governed by federal law."); *Demelio v. Wal-Mart Stores E., L.P.*, No. 21-CV-1900, 2023 WL 2480192, at *3 (S.D.N.Y. Mar. 13, 2023) ("While New York law governs the substantive slip-and-fall claim, federal law applies to procedural aspects of the claim."  (footnote omitted)).

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *see also Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) ("The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists, but when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to an absence of evidence on

an essential element of the nonmovant's claim." (internal quotation marks and citation omitted));

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (noting that a

"party moving for summary judgment may satisfy his burden . . . by demonstrating that the non-

moving party's evidence is insufficient to establish an essential element of the non-moving

party's claim" (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988))); *Perez v. Dolgen*

*Corp. of N.Y. Inc.*, 721 F. Supp. 3d 206, 214 (S.D.N.Y. 2024) ("By contrast [to New York State

law], under the federal standard, a '[d]efendant's summary judgment burden is satisfied if it can

point to "an absence of evidence to support an essential element" of [the] [p]laintiff's negligence

claim.'" (second, third, and fourth alterations in original) (quoting *Sauro* v. *Costco Wholesale*

*Corp.*, No. 18-CV-2091, 2019 WL 3046852, at *6 (E.D.N.Y. May 29, 2019))).  Once the moving

party has met its burden, the non-moving party may demonstrate that there is a genuine issue for

trial by identifying specific facts and affirmative evidence that contradict those offered by the

moving party.  *Celotex*, 477 U.S. at 323–24; *see also Bustamante*, 100 F.4th at 432 ("Once a

movant has [met its burden], the nonmovant must set forth specific facts showing that there is a

genuine issue for trial."  (internal quotation marks and citation omitted)); *McKinney v. City of*

*Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) ("If the moving party carries its burden, the

nonmoving party must 'come forward with evidence that would be sufficient to support a jury

verdict in its favor.'" (quoting *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83,

91 (2d Cir. 2002))); *Strass v. Costco Wholesale Corp.*, No. 14-CV-6924, 2016 WL 3448578, at

*3 (E.D.N.Y. June 17, 2016) ("Under the federal summary judgment standard, [d]efendant is not

required to put forth evidence affirmatively demonstrating its lack of knowledge or its

constructive knowledge; rather, it need only show that [p]laintiffs will not be able to prove at

trial that [d]efendant had such knowledge.").  "[I]f the defendant's papers fail[] to show the

insufficiency of the plaintiffs' evidence and entitlement to judgment, the plaintiff is entitled to

the dismissal of the motion [for summary judgment] without having to make any evidentiary showing." *Nick's Garage, Inc.*, 875 F.3d at 118; *Hepburn v. City of New York*, No. 21-CV-04158, 2025 WL 1640205, at \*13 (E.D.N.Y. June 10, 2025) ("[U]nless the moving defendant cites portions of the record that show its entitlement to judgment, an assertion by the defendant that the plaintiff 'has not produced any evidence,' without more, does not show that the plaintiff has insufficient evidence." (quoting *Nick's Garage, Inc.*, 875 F.3d at 115–16)); *Bigsby v. Barclays Cap. Real Est., Inc.*, No. 14-CV-1398 , 2019 WL 5429372, at \*3 (S.D.N.Y. Oct. 23, 2019) ("*Nick's Garage* made clear that more than a conclusory statement that there was no evidence was necessary to meet the moving party's burden.").

The Court properly granted summary judgment in favor of Defendant on Plaintiff's negligence claim based on the claims and arguments that were before the Court. As explained in the February 2025 Decision, the Court "applie[d] federal procedural law to determine the parties' relative burdens of proof." (Feb. 2025 Decision 12.) Thus, the burden shifts to Plaintiff to "set forth specific facts showing there is a genuine issue for trial," after "Defendant . . . [has] demonstrat[ed] that Plaintiff's evidence is insufficient to establish an essential element of her negligence claim." (*Id.* (quoting *Bustamante*, 100 F.4th at 432).) Although establishing that Defendant created the hazardous condition — the water in Defendant's store in which Plaintiff testified that she slipped — is an essential element of Plaintiff's negligence claim, Plaintiff did not allege that Defendant created the hazardous condition.[20] (Mahoney Dep. 65:16–21); *Borley v. United States*, 22 F.4th 75, 79 (2d Cir. 2021) ("In slip-and-fall cases, . . . to show a 'breach of duty,' a plaintiff must show that a defendant either created the dangerous condition or had actual

---

[20] Indeed, the Complaint does not specify whether Plaintiff is basing her claim on (1) Defendant creating the hazard, (2) its actual notice, or (3) its constructive notice. (*See generally* Compl.)

or constructive notice of the condition and its dangerousness.").  Plaintiff alleges in her Complaint that "the Whole Foods [s]tore . . . was in a dangerous, defective, hazardous and unsafe condition due to the negligence, recklessness, carelessness and culpability of [Defendant]" and that she was "caused to sustain bodily" injury at Defendant's store due to Defendant's negligence.  (Compl. ¶¶ 15, 19.)  Such "a formulaic recitation of the elements" does not provide the Defendant — or the Court — fair notice as to the basis of Plaintiff's negligence claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" (third alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007))); *Gorawara v. Caprio*, No. 24-17-CV, 2025 WL 1571762, at *2 (2d Cir. June 4, 2025) (explaining that a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" (quoting *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014))); *Lopez v. United States*, No. 15-CV-9695, 2016 WL 7156773, at *10 (S.D.N.Y. Dec. 7, 2016) (finding that the plaintiff's allegations that the defendant's employees "created a dangerous condition [were] simply too conclusory and speculative to warrant the assumption of truth" where the plaintiff alleged, *inter alia*, that "some unspecified . . . facilities . . . were dangerous and/or defective due to the carelessness, reckless and negligence of the [d]efendant" and that the "dangerous and/or defective nature" caused the "slippery condition" (internal quotation marks omitted)); *Weiss v. Lincoln Nat'l Life Ins. Co.*, No. 14-CV-4944, 2016 WL 4991533, at *6 (E.D.N.Y. Sept. 15, 2016) (explaining that, in the motion to dismiss context, "[the defendant] is not required to produce evidence to defeat a claim [the plaintiff] has not alleged").  In addition, Plaintiff's opposition to Defendant's motion for summary judgment stated that "Whole Foods' notice is the only issued raised by its summary judgment motion."  (Pl.'s Opp'n 7); *Watts v. Wal-Mart Stores E., LP*, No. 16-CV-4411, 2018 WL 1626169, at *4–9 (S.D.N.Y. Mar. 29, 2018) (granting the

defendant's motion for summary judgment in its entirety where plaintiff noted in its 56.1 response that she would "be making only a constructive notice argument in the within opposition papers"). Accordingly, because neither the Complaint nor Plaintiff's summary judgment papers contended that Defendant created the hazard, it was appropriate for the Court in the February 2025 Decision to address only the issues of actual or constructive notice — the issues raised by the parties — in granting Defendant's motion as to Plaintiff's negligence claim.

### iii.    Creation of the hazard

Plaintiff argues that "[e]ven if Defendant raised the issue of creation of the hazard, a reasonable jury can conclude [that] a preponderance of the evidence shows Defendant caused the floor to be wet" because "Defendant affirmatively chose to utilize a seafood display 'designed' to drip water from melting ice onto the floor" in the area in which Plaintiff fell. (Pl.'s Mem. 12–13; *see also* Pl.'s Reply 12.)

Defendant argues that "[e]ven if the Court were to overlook [P]laintiff's failure to address 'cause and create' in the summary judgment briefing, [P]laintiff's own sworn deposition testimony . . . expressly fails to substantiate any possible contention" that Defendant created the liquid condition. (Def.'s Resp. 10.)

"In the context of a summary judgment motion, [the] [p]laintiffs' 'burden . . . is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that [the] [d]efendant created the hazardous condition.'" *Strass*, No. 14-CV-6924, 2016 WL 3448578, at *4 (alteration in original) (quoting *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 319 (E.D.N.Y. 2014)); *see Wang v. Home Depot U.S.A., Inc.*, No. 23-CV-8995, 2025 WL 1582251, at *4 (E.D.N.Y. June 4, 2025) (quoting same); *see also Tenay v. Culinary Tchrs. Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (noting that "in cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden

under Rule 56 [of the Federal Rules of Civil Procedure] will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim" (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988))). "'To establish that a defendant created a dangerous condition or defect, a plaintiff must point to 'some affirmative act' on the part of the defendant.'" *Lyman v. PetSmart, Inc.*, No. 16-CV-4627, 2018 WL 4538908, at *5 (S.D.N.Y. Sept. 21, 2018) (quoting *Vasquez v. United States*, No. 14-CV-1510, 2016 WL 315879, at *7 (S.D.N.Y. Jan. 15, 2016)); *see also Wang*, 2025 WL 1582251, at *4 ("'[A] plaintiff must point to some affirmative act on the part of the defendant.'" (quoting *Decker v. Middletown Walmart Supercenter Store*, No. 15-CV-2886, 2017 WL 568761, at *5 (S.D.N.Y. Feb. 10, 2017))). "'Although circumstantial evidence may be sufficient to defeat a motion for summary judgment if it creates an inference that [d]efendant created the condition through affirmative acts, [a] plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard.'" *Marquez v. Wal-Mart Stores E., LP.*, No. 21-CV-5179, 2025 WL 1293293, at *4 (E.D.N.Y. Apr. 18, 2025) (alterations in original) (quoting *Decker*, 2017 WL 568761, at *5).

Although the Court appropriately addressed whether Defendant had actual or constructive notice in the February 2025 Decision, Plaintiff has now raised the issue of whether Defendant created the hazard. Because both sides now argue over whether Defendant created the hazard, (*see* Pl.'s Mem. 12–17; Def.'s Resp. 10–14, Pl.'s Reply 11–15), and although the parties did not previously raise this issue, the Court nevertheless considers the arguments made in the parties' order to show cause briefing. As further explained below, the Court grants summary judgment in favor of Defendant on creation of the hazard because Plaintiff has not offered any evidence beyond mere speculation regarding how Defendant created the water condition. *See Lyman*, 2018 WL 4538908, at *5 ("'[A] plaintiff cannot avoid summary judgment through mere

speculation and conjecture regarding how a defendant may have created a particular hazard.'" (quoting *Decker*, 2017 WL 568761, at *5)).  Although Haack testified that water could "potentially" overflow onto the sales floor if it did not "go[] down that drain,"  Haack was unaware of any leaks from the seafood display cases and the drain was designed to "go[] underneath the [seafood display] case, so there wouldn't be a leak."  (Haack Dep. 60:3–16, 74:16–75:5.)  In addition, Haack was unaware of any workers tracking water out from behind the seafood display cases onto the sales floor, (Haack Dep. 60:17–21), and Plaintiff testified she did not see any footprints or cart tracks in the area where she slipped after her fall, or see water accumulating on the floor at any time.  (Mahoney Dep. 81:16–19, 93:7–12, 100:7–16.)  Because Plaintiff has not produced evidence of any affirmative act by Defendant that created a hazardous condition, there is no genuine issue of material fact in the record "'from which a reasonable jury could draw the inference that Defendant created the hazardous condition.'"  *Wang*, 2025 WL 1582251, at *4 (quoting *Lionel*, 44 F. Supp. 3d at 319); *Lyman*, 2018 WL 4538908, at *6 ("The mere fact that a puddle of liquid originated from store merchandise does not establish the creation of the puddle, because, the puddle is not a direct consequence of the defendant's passive activity of providing merchandise for sale." (quoting *Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 218, 220 (E.D.N.Y. 1998))); *see also Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 276 (S.D.N.Y. 2024) (finding that evidence that the defendant "merely permitted a dangerous condition to exist" was not an "affirmative act" (citation omitted)), *aff'd*, No. 24-715, 2025 WL 973050 (2d Cir. Apr. 1, 2025); *Kortright-Conklin v. Lowe's Home Ctrs., LLC*, No. 21-CV-1305, 2023 WL 5723855, at *10 (N.D.N.Y. Sept. 5, 2023) ("Passive activity does not amount to an affirmative act." (citation omitted)).

Accordingly, the Court clarifies that the February 2025 Decision granted summary judgment on Plaintiff's negligence claim after considering only the issues of actual or

constructive notice.  In addition, in view of the parties' arguments regarding creation of the hazard in the order to show cause briefing, the Court grants summary judgment in favor of Defendant on the issue of creation of the hazard.

## III.  Conclusion

For the foregoing reasons, the Court dismisses Plaintiff's section 376 claim, clarifies that the February 2025 decision granted Defendant's motion for summary judgment on Plaintiff's negligence claim as to the issues of actual and constructive notice, and grants summary judgment in favor of Defendant on the issue of creation of the hazard.

Dated: September 26, 2025
         Brooklyn, New York

                          SO ORDERED:


                          _____s/ MKB_____
                          MARGO K. BRODIE
                          United States District Judge